### 63844. SHEPPARD et al. v. TRIBBLE HEATING & AIR CONDITIONING, INC.

POPE, Judge.

Tribble Heating & Air Conditioning, Inc. brought this action against Robert W. Sheppard and his wife, seeking to hold Mr. Sheppard personally liable for certain debts of Sheppard & Rivers Construction Co., Inc., and to set aside certain deeds from Mr. Sheppard to his wife as fraudulent conveyances. The complaint also sought damages and attorney fees. The jury returned a special verdict in favor of Tribble, and judgment was entered accordingly. The Sheppards challenge the sufficiency of the evidence to support the verdict.

1. Viewed in a light most favorable to upholding the verdict, the evidence at trial showed that Mr. Sheppard was the sole stockholder and director of Sheppard & Rivers Construction Co., Inc. (hereinafter "Sheppard-Rivers") from 1975 through 1978, during which time Tribble performed certain work for the corporation and was not paid. During this time Mr. Sheppard engaged individually in the same business as the corporation. He made all decisions concerning corporate business. Corporate meetings were held infrequently, and the corporation was undercapitalized for the construction business. Employees of Sheppard-Rivers worked on Mr. Sheppard's personal projects as well as corporate projects. Mr. Sheppard's personal business, Sheppard-Rivers and another construction corporation wholly owned by him all occupied the same office.

The evidence established a pattern of conduct by Mr. Sheppard whereby he bought land in his own name, built a house thereon through Sheppard-Rivers, and then left the property in his own name or sold it in his own name, leaving suppliers/creditors of Sheppard-Rivers unpaid. The evidence also showed that Mr. Sheppard had intermingled his personal finances with those of Sheppard-Rivers and his other wholly-owned corporation. For

example, checks representing proceeds from the sale of houses built by Sheppard-Rivers were deposited to his personal account and to the account of the other wholly-owned corporation. Sheppard-Rivers paid for land deeded to him individually. Sheppard-Rivers assets were used to pay Mr. Sheppard's personal loans, the mortgage on his house, personal attorney fees, and loans of his other wholly-owned corporation.

"Where the courts have disregarded the corporate entity because the corporation is the mere alter ego or business conduit of a person, it has generally been on the idea that the corporate entity has been used as a subterfuge and to observe it would be to work an injustice. 'To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.' " *Farmers Warehouse v. Collins,* 220 Ga. 141, 150 (137 SE2d 619) (1964). Applying the foregoing law to the facts in this case, we conclude that the evidence amply supported the verdict holding Robert Sheppard personally liable for the debts of Sheppard and Rivers Construction Co., Inc. Accord, *DeJong v. Stern,* 162 Ga. App. 529 (3) (292 SE2d 115) (1982); *Hale v. Parmenter Ins. Agy.,* 150 Ga. App. 76 (1) (256 SE2d 623) (1979); *Trans-American Communications v. Nolle,* 134 Ga. App. 457 (214 SE2d 717) (1975); see also *Adams v. Cox,* 152 Ga. App. 376 (1) (262 SE2d 634) (1979).

2. The evidence also showed that Mr. Sheppard executed four personal notes dated June 22, 1978 in favor of Tribble. At this time Sheppard-Rivers also had an outstanding debt to Tribble. Two days later Mr. Sheppard eliminated his equity in one of the two last pieces of real property he owned by executing a security deed therefor to his wife. Although the notes were dated June 22, they were not delivered to Tribble until June 26. On July 12, 1978 Mr. Sheppard conveyed the last piece of real property he owned to his wife by deed of gift. As the result of these two transactions, Mr. Sheppard's outstanding debts greatly exceeded his remaining assets. There was evidence of hostility between the parties due to Tribble's persistence in attempting to collect. Mr. Sheppard regularly evaded Tribble and eventually denied the debt entirely. Mrs. Sheppard assisted in this evasion and also denied the debt to Tribble. Finally, there was evidence that Mr. Sheppard had executed false affidavits stating that construction bills had been paid in order to close the sale of houses.

"The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz: . . . 2. Every

conveyance of real or personal estate, by writing or otherwise ... had or made with intention to delay or defraud creditors, and such intention known to the party taking. . . 3. Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance." Code Ann. § 28-201. Tribble contends that the evidence was sufficient to permit recovery under this statute. We agree.

"A deed is void as to creditors when made for the purpose of hindering, delaying, or defrauding them in the collection of their debts, and when the grantee in taking the same has knowledge of such fraudulent intent or reasonable ground to suspect it." *Taylor v. Gates,* 206 Ga. 880, 881 (59 SE2d 365) (1950). A conveyance of property by a deed to secure debt is as much open to attack for fraud as an absolute conveyance. *McLendon v. Reynolds Grocery Co.,* 160 Ga. 763 (2) (129 SE 65) (1925). A fraudulent intent or reasonable ground to suspect fraud ". . . may be found to have existed even though the grantor was and is not insolvent." *Keeter v. Bank of Ellijay,* 190 Ga. 525, 528 (9 SE2d 761) (1940). "[F]raud may not be presumed, but must be proved; fraud being subtle in its nature, slight circumstances may be sufficient to carry conviction of its existence; in cases of close relationship, and when an attack is made that a conveyance has been with intent to hinder, delay, or defraud creditors, the transaction will be submitted to close scrutiny." *Liberty Lumber Co. v. Silas,* 181 Ga. 774, 778 (184 SE 286) (1936). The bona fides of the transaction is to be determined by the jury, and in the case at bar the evidence did not demand a finding other than that returned by the jury. Accord, *Brooks v. Griffin,* 10 Ga. App. 497 (1) (73 SE 752) (1912); see *Dwight v. Acme Lumber &c. Co.,* 189 Ga. 473 (6 SE2d 586) (1939). In light of this holding, we need not consider whether the evidence was also sufficient to permit recovery under Code Ann. § 28-201(3).

3. Tribble's complaint contained prayers for actual damages, "punitive" damages, and attorney fees. The jury awarded Tribble $775.00 in "punitive" damages and $3,000.00 in attorney fees.

"Code § 105-2002 provides for 'additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff.' There are no provisions for *punitive damages* in our Code. The *additional damages* referred to are those damages contained in § 105-2001 and § 105-2003. . . . There can be no recovery of exemplary damages under § 105-2002 unless there is a recovery of compensatory damages under § 105-2001 or § 105-2003." *Blanchard v. Westview Cemetery,* 133 Ga. App. 262, 270 (211 SE2d 135) (1974). Since there was no award of compensatory damages in this case, the verdict awarding "punitive" (additional)

damages can not stand. See *Haugabrook v. Taylor,* 225 Ga. 317 (168 SE2d 162) (1969); see also *Piedmont Cotton Mills v. General Whse. No. Two, Inc.,* 222 Ga. 164 (5) (149 SE2d 72) (1966).

"Attorney fees, however, may be awarded under Code Ann. § 20-1404 where the 'defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense.' " *Jones v. Spindel,* 239 Ga. 68, 72 (235 SE2d 486) (1977). There is evidence of record to support the verdict awarding attorney fees.

The judgment of the trial court is affirmed with direction that the award of "punitive" damages be stricken.

*Judgment affirmed with direction. Deen, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 7, 1982 —
REHEARING DENIED OCTOBER 5, 1982.

*Donald W. Huskins,* for appellants.
*Joe O. Mangum III,* for appellee.