69738. ABBOTT FOODS OF GEORGIA, INC. et al.
v. ELBERTON POULTRY COMPANY, INC.
(327 SE2d 751)

BANKE, Chief Judge.

Elberton Poultry Company, Inc. sued both Abbott Foods of Georgia, Inc., and its president and principal shareholder, Larry Abbott, to collect a $16,620 account indebtedness incurred by Abbott Foods for an order of chicken parts. The trial court directed a verdict against Abbott Foods for the full amount of the alleged indebtedness and further ruled as a matter of law that Larry Abbott was either jointly liable with the corporation for the full amount of the claim or was liable for nothing at all. The jury returned a verdict against Abbott on the issue of liability, and both he and the corporation joined in this appeal. The primary issue before us is whether, on the evidence presented, Abbott may be help personally liable for an indebtedness he incurred on behalf of the corporation.

Abbott Foods began operations in May or June of 1981 and ceased doing business in May of 1982, with insufficient funds to pay its debts. Although it had gross sales during its one-year existence in excess of $1,700,000, it had relatively few assets, its principal business being, in effect, merely to act as a middleman between suppliers and purchasers of food products.

Larry Abbott was not only the corporation's president and principal shareholder but also its sole employee. As such, he exercised absolute control over the company's bank account. On or about March 22, 1982, he ordered $22,620 worth of chicken parts from Elberton Poultry Company for re-sale to another firm. Abbott Foods took delivery of the product on March 24, 1982, and the sale was invoiced to the company by Elberton Poultry on that date. Before going out of business, Abbott Foods paid $6,000 on the account.

Larry Abbott admitted placing the order and further admitted that $16,620 remained owing on the account. However, he denied any personal liability, contending that he had been acting at all times as agent for a disclosed principal. In an effort to "pierce the corporate veil," Elberton Poultry proved that although Abbott Foods was substantially overdrawn on its checking account during January, February, and March of 1982, Abbott nevertheless paid himself several thousand dollars in "salary advances" from the corporate checking account during that period. It was also shown that Abbott had written corporate checks totalling $39,500 to a company known as Merr En-

terprises, Inc., for the purchase in his own name of that company's stock, placing on two of these checks the notation, "loan from Larry Abbott." (It is disclosed in Abbott's brief on appeal that the person who actually came into possession of these funds was Abbott Foods' only other shareholder.) In addition, it was shown that Abbott had used company funds to make loan and insurance payments on his personal automobile. There was no evidence that Abbott had ever executed any written instrument evidencing an indebtedness to the corporation on these transactions, nor was there any indication that any of the transactions had been authorized by the board of directors. In fact, there was no indication that there was a functioning board of directors. With regard to his payment of salary advances to himself, Abbott testified, "I took [them], you know, to cover the needs of the employer — myself." *Held*:

1. The trial court did not err in directing a verdict against Abbott Foods, Inc., there being no dispute over either the balance due on the account or the corporation's liability for the purchase.

2. The evidence was sufficient to support a finding that Abbott had utilized the corporate entity as a "mere instrumentality" or business conduit for the transaction of his own personal business, to the resulting detriment of corporate creditors. It is, of course, axiomatic that the evidence will be construed most strongly in favor of the verdict on appeal. See, e.g., *Allard Prods. v. Apollo Contractors*, 163 Ga. App. 373, 374 (2) (294 SE2d 594) (1982); *Durden v. Collins*, 169 Ga. App. 347, 348 (1) (312 SE2d 842) (1983). "Courts permit 'piercing the corporate veil' 'in situations where the parties involved have themselves disregarded the separateness of legal entities by commingling and confusion of properties, records, control, etc.' [Cits.] It is obvious that if the individual who is the principal shareholder or owner of the corporation conducts his private and corporate business on an interchangeable or joint basis as if they were one, then he is without standing to complain when an injured party does the same. 'Under such circumstances, the court may disregard the corporate entity.' [Cits.]" *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (250 SE2d 851) (1978). Accord *Sheppard v. Tribble Heating & Air Cond.*, 163 Ga. App. 732 (1) (294 SE2d 572) (1982); *Saxton v. Luke*, 164 Ga. App. 170 (296 SE2d 751) (1982).

Because the case was tried on the "alter ego" or "mere instrumentality" theory, rather than on the theory of misappropriation by a shareholder of the assets of an insolvent corporation, there was no need to introduce proof that the corporation was without assets upon which a levy could be attempted. Compare *Emhart Corp. v. McLarty*, 226 Ga. 621, 624 (176 SE2d 698) (1970); *Fountain v. Burke*, 160 Ga. App. 262, 263 (287 SE2d 39) (1981); *G. A. Thompson & Co. v. Partridge*, 636 F2d 945, 996 (5th Cir. 1981). Accord *Bone Constr. Co. v.*

*Lewis*, supra; *Sheppard v. Tribble Heating & Air Cond.*, supra; *Saxton v. Luke*, supra. However, even had such proof been required, the jury could have inferred the absence of any significant corporate assets from Abbott's own testimony that the corporation never had any major assets and that only $30 or $40 was left in the checking account when the company ceased operations.

3. It follows from the foregoing that the trial court did not err in admitting evidence either of the salary advances which Abbott had made to himself or of the payments he had made to Merr Enterprises, Inc., for the purchase of its stock. This evidence was clearly relevant to the issue of whether he had treated the corporation's funds as his own and thereby treated the corporate entity as a mere instrumentality for the conduct of his own personal business affairs.

4. Because the plaintiff's case was predicated on the alter ego or mere instrumentality theory rather than any alleged agreement by Abbott to be bound personally on the account, the court did not err in refusing to charge the jury that an employee or agent who, acting within the scope of his authority, enters into a contract for a disclosed principal does not bind himself personally in the absence of an express agreement to do so.

5. The remaining enumerations of error have been carefully considered and determined to be without merit for the reasons previously stated herein.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED FEBRUARY 11, 1985 —
REHEARING DENIED MARCH 6, 1985.

*Dewey N. Hayes, Jr.*, for appellants.
*James D. Hudson*, for appellee.