A92A0139. CUSTOM LIGHTING & DECORATING, LTD. et al. v. HAMPSHIRE COMPANY.
(418 SE2d 811)

BEASLEY, Judge.

Custom Lighting & Decorating, Ltd., failed to pay for cabinets which it had purchased from The Hampshire Company, resulting in Hampshire's instituting this suit against Custom Lighting for $12,718.27 on open account.

Custom Lighting, which is without assets, is a closely-held corporation wholly owned by Bill and Linda Edenfield. Through Custom

Lighting, Linda Edenfield operated a store which sold housing fixtures but is no longer in business. The trial court granted Hampshire's motion to add Bill and Linda Edenfield as party defendants, based on allegations that they disregarded the separateness of their personal and business affairs by commingling and confusion of property, and that Custom Lighting had become their alter ego.

The trial court also granted a motion filed by Hampshire to add Custom Homes of North Georgia, Inc., as a party defendant, based on allegations that Custom Homes had disregarded the separateness of its affairs and the affairs of Custom Lighting and the Edenfields, and that Custom Lighting is the alter ego of Custom Homes. It is also a closely-held corporation wholly owned by the Edenfields, through which they engaged in home building.

The Edenfields allege that the cabinets were purchased by Custom Homes from Custom Lighting and installed in a residence in Hall County which, although titled in Linda Edenfield's name, is a Custom Homes "spec" home. They maintain that Custom Homes paid Custom Lighting for the cabinets by issuance of a $17,268.35 check from Custom Homes to Custom Lighting. The date of this check is prior to the date of Hampshire's earliest invoice to Custom Lighting for the cabinets, and the payment code in the bottom left-hand corner of the check has been marked through and changed. Hampshire's invoice shows the amount owed for the cabinets as being $17,249.76, and defendants' accountant stated that the cabinets were sold by Custom Homes to Custom Lighting for $18,974.74.

The residence was used as the Edenfields' personal residence. Linda Edenfield testified that the residence was titled in her name because it was acquired before Custom Homes was incorporated. But Custom Homes transferred this residence to Linda Edenfield by deed of gift in 1987, assuming liability on a promissory note with an unpaid balance of $37,730. In 1988, she borrowed $180,000 from First National Bank, securing the indebtedness with a deed to secure debt to this property.

In 1989, four checks totalling $21,046.42 were drawn on Custom Lighting's checking account in payment of the Edenfields' personal debts, which included property taxes on the residence, as well as property taxes and mortgage payments on another residence owned by them in DeKalb County. Four checks totalling $3,343.96 were drawn on Custom Homes' checking account in payment of the Edenfields' personal debts. Three checks totalling $1,013.94 represented payment by Custom Lighting for Custom Homes' debts. Defendants' accountant stated that these were mistaken payments which were reclassified so as to reduce the corporations' debts to the Edenfields.

Finding no material issue of fact on the question of whether the

corporate veil of Custom Lighting should be pierced and the Edenfields held personally liable on the corporate debt, the trial court granted Hampshire's motion for summary judgment on that issue. The court refused to dismiss Custom Homes as a party defendant, because of defendants' admission that Custom Homes had an interest in the residence in which the cabinets were installed and because of a material issue of fact as to whether the $17,268.35 check from Custom Lighting to Custom Homes was for payment of the cabinets. The court also discerned material issues of fact as to the amount owed on the account.

1. Defendants argue that in ruling on Hampshire's motion for summary judgment, the trial court was not authorized to consider the Edenfields' depositions because they were not "filed with the court" in accordance with OCGA § 9-11-5 (e), and thus they were not "on file" as required by OCGA § 9-11-56 (c).

Section 9-11-5 (e) requires filing of papers with the clerk unless the judge allows filing with him or her, and the judge "shall note thereon the filing date and forthwith transmit them to the office of the clerk." Section 9-11-56 (c) requires service of a motion for summary judgment on the opposing party at least 30 days before a hearing. The supporting evidence must be on file at least 30 days before the hearing also, unless the judge extends the time. *Porter Coatings v. Stein Steel & Co.*, 247 Ga. 631, 632 (278 SE2d 377) (1981). See *Barrett v. Wharton*, 196 Ga. App. 688 (396 SE2d 603) (1990).

The depositions were filed with the judge, along with a copy of the motion when the motion was filed with the clerk. The judge through oversight failed to transmit them to the clerk's office. The court has verified that at the hearing on the motion for summary judgment, the parties were aware that the court had considered the depositions, and the court relinquished them to defendants' attorney with the understanding that they would be filed in the clerk's office and transmitted to this Court. When counsel failed to do that, the court ordered that the depositions be sent here by supplemental record, as authorized by OCGA § 5-6-41 (f). That was done. There is no reversible error in this regard, and the depositions are considered part of the record.

2. As the trial court ruled, plaintiff was entitled to summary judgment as to whether the Edenfields were personally liable for payment of the debt, as a matter of law. No material issue of fact remained on this issue.

" 'Where the courts have disregarded the corporate entity because the corporation is the mere alter ego or business conduit of a person, it has generally been on the idea that the corporate entity has been used as a subterfuge and to observe it would be to work an injustice. "To establish the alter ego doctrine it must be shown that the

stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud." ' [Cit.]" *Sheppard v. Tribble Heating & Air Conditioning*, 163 Ga. App. 732, 733 (1) (294 SE2d 572) (1982). See also *Hickman v. Hyzer*, 261 Ga. 38, 39 (1) (401 SE2d 738) (1991), citing Kaplan.

" 'Courts permit "piercing the corporate veil" "in situations where the parties involved have themselves disregarded the separateness of legal entities. . . ." It is obvious that if the individual who is the principal shareholder or owner of the corporation conducts his private and corporate business on an interchangeable or joint basis as if they were one, then he is without standing to complain when an injured party does the same. "Under such circumstances, the court may disregard the corporate entity." (Cits.)' [Cits.]" *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. 672, 673 (2) (327 SE2d 751) (1985). See *Saxton v. Luke*, 164 Ga. App. 170 (296 SE2d 751) (1982).

"[E]ach situation must be considered by the court on its own merits and on the factual situations therein involved. In other words, the legal entity of a corporation may be disregarded in a given situation, and, as to that situation may be deemed not to be entitled to corporate privileges and immunities, but as to other activities and transactions, it may retain its identity as a corporation." Kaplan's Nadler, Ga. Corps. and Lim. Parts. (1991 ed.), § 3-14, p. 64 (footnote omitted). Accord *United States v. Dean Van Lines*, 531 F2d 289, 292 (4) (5th Cir. 1976) (recognizing that when a corporation has been liquidated and its assets can be traced into the hands of shareholders, the shareholders may be required to satisfy corporate debts to the extent of the assets they have received).

The undisputed facts show that the cabinets purchased by Custom Lighting were installed in a residence which had been given to the Edenfields by Custom Homes, and that the Edenfields did not devote any of their personally held funds to payment for the cabinets.

Under these facts, the Edenfields have either used Custom Lighting and Custom Homes as mere instrumentalities for their personal acquisition of the cabinets and the residence in which they were installed, or there has become such a unity of interest and ownership that the separate personalities of the corporations and the owners, at least as to the cabinet transactions under review, ceased to exist. In either event, there is no question that the corporate veil has been pierced for this third-party seller who has not been paid. See *Hickman v. Hyzer,* supra.

3. The court also correctly ruled that there *are* material issues of fact as to whether Custom Homes paid Custom Lighting for the cabi-

nets.

4. Moot are other issues concerning the Edenfields' incorporation of Custom Homes; their issuance of stock and payment of consideration for it; the holding of shareholders' and board of directors' meetings and the keeping of minutes of such meetings; loans by the Edenfields to Custom Homes not authorized by corporate resolutions; payment of monies by Custom Homes to the Edenfields and their daughter; and Custom Homes' payment of the Edenfields' personal debts.

*Judgment affirmed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED MAY 20, 1992.

*Hartness, Link & Hardman, William B. Puryear,* for appellants. *Burroughs & LeFevre, Catherine T. Crawford,* for appellee.