A95A1271. J-MART JEWELRY OUTLETS, INC. et al.
v. STANDARD DESIGN et al.
(462 SE2d 406)

BLACKBURN, Judge.

Appellant Diamond Jim Halter, individually and d/b/a Diamond Jim's Emporium, appeals from the trial court's partial denial of his motion for directed verdict and the jury's verdict piercing the corporate veil thereby holding him responsible for the obligations of the

corporation in which he was the major shareholder.

In identical complaints against J-Mart Jewelry Outlets, Inc. (J-Mart), the Tifton Diamond House, Inc., and Halter, four J-Mart suppliers, Standard Design, JGL, Inc., Roma Industries, Inc., and Interings, Inc., alleged joint and several liability on open accounts, fraud, and racketeering as evidenced by theft and mail fraud. By agreement of the parties, the complaints were consolidated for the jury trial. Upon the close of evidence, the trial court granted Halter's motion for directed verdict as to the racketeering count but denied the motion as to Halter's personal liability to the suppliers for alleged corporate debts determining that the evidence presented a jury question as to whether the corporate veil had been pierced. The jury returned a verdict against both corporate defendants and Halter personally, awarding $107,517 to Standard Design, $184,104.29 to JGL, $64,261.57 to Roma, and $136,819.93 to Interings.

1. Halter argues that the evidence was insufficient to support the jury's finding that he is individually liable to appellees. We disagree.

"The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility. Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders, the mere operation of corporate business does not render one personally liable for corporate acts. Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends. There must be evidence of abuse of the corporate form. Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." (Punctuation omitted.) *Fuda v. Kroen*, 204 Ga. App. 836, 837 (1) (420 SE2d 767) (1992).

In deciding this enumeration of error, we are confronted with two maxims that sometimes conflict. On the one hand, we are mindful that "[g]reat caution should be exercised by the court in disregarding the corporate entity. [Cit.]" (Punctuation omitted.) *Williams Plaza v. Sedgefield Sportswear &c.*, 164 Ga. App. 720, 721 (297 SE2d 342) (1982). On the other, it is axiomatic that "when litigated, the issue of 'piercing the corporate veil' is for the jury[,]" id. at 724, unless there is no evidence sufficient to justify disregarding the corporate form. Id. Our examination of the trial transcript convinces us that there is evidence in this case rising to such level.

Halter knew as early as late April but not later than June 1991 that J-Mart would have to cease operations as a result of its financial

difficulties. There was direct evidence that the $6,902.87 balance on Halter's American Express personal account was paid by J-Mart on December 23, 1991, eight days before it ceased doing business. The check was marked "PAYMENT IN FULL: JIM'S PERSONAL[,]" indicating that a material question of fact existed as to whether Halter used corporate funds to pay a personal debt. The evidence also established that J-Mart, with knowledge that it would soon cease doing business, purchased a new Cadillac for Halter's use. It thereafter made three payments on the vehicle before transferring it to Halter for $1 and allowing him to assume the remaining payments indicating the presence of further questions of material fact relative to a de facto unauthorized payment for Halter's personal benefit. See *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. 672, 673-674 (327 SE2d 751) (1985) (evidence that sole stockholder used corporate funds to pay himself salary advances and to make loan and insurance payments on his personal automobile relevant to determine whether corporate entity used as mere instrumentality to conduct personal affairs). In light of the evidence presented, the trial court properly denied the motion for a directed verdict upon the claim of Halter's personal liability for violation of the corporate form. OCGA § 9-11-50 (a). See *Shaw v. Ruiz*, 207 Ga. App. 299, 303 (428 SE2d 98) (1993) (" 'A directed verdict is not authorized unless there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions demands a certain verdict. [Cits.]' ").

Evidence raising material questions of fact as to Halter's possible abuse of the corporate form were thus properly before the jury. "On appeal, we construe all the evidence most strongly in support of the verdict, for that is what we must presume the jury did; and if there is evidence to sustain the verdict, we cannot disturb it. *McLarty v. Kushner*, 173 Ga. App. 432 (326 SE2d 777)." *J. C. Penney Cas. Ins. Co. v. Woodard*, 190 Ga. App. 727, 730 (380 SE2d 282) (1989). So viewing the evidence, we conclude that the jury's verdict was proper and must stand.

2. Halter also contends that the trial court erred in denying his motion for directed verdict in that the oral repayment agreements alleged by appellees were barred by the Statute of Frauds. OCGA § 13-5-30 (2). Inasmuch as the jury properly rendered its verdict as to Halter's individual liability upon evidence sufficient to pierce the corporate veil, we need not address the applicability of the Statute of Frauds.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 6, 1995.

*William R. Folsom*, for appellants.
*James G. Tunison, Jr.*, for appellees.