## A00A1882. SOERRIES v. DANCAUSE.
### (546 SE2d 356)

ELLINGTON, Judge.

In this dram shop liability case, William A. Soerries appeals from a jury verdict that pierced the corporate veil and held him personally liable for damages. Because we find that the evidence presented supported the jury's verdict, we affirm.

The facts, viewed in a light most favorable to the jury's verdict,[1] show that Soerries was the sole shareholder of Chickasaw Club, Inc., which operated a popular nightclub in Columbus for 23 years until it closed in 1999. At approximately 11:45 p.m. on July 31, 1996, 18-year-old Aubrey Lynn Pursley was intoxicated when she entered the Chickasaw Club. Although a Columbus ordinance prohibits individuals under 21 years old from entering nightclubs, it is undisputed that club employees did not check Pursley's identification to establish her age. A friend testified that Pursley already was intoxicated when she arrived at the club. Even so, friends testified that Pursley drank additional alcohol at the club and was visibly intoxicated when she left at approximately 3:00 a.m. on August 1, 1996. Security videotapes showed that she left the club with a beer in her hand. Shortly thereafter, Pursley was killed when she lost control of her car and struck a tree.

Joseph Dancause, Pursley's stepfather, sued Chickasaw Club, Inc. and Soerries individually for the cost of the car and for punitive damages. Following a trifurcated jury trial,[2] the trial court entered judgment on the jury's verdict, which pierced the corporate veil and found Soerries jointly liable with the corporation for $6,500 in compensatory damages and solely liable for $187,500 in punitive

---

[1] *J-Mart Jewelry Outlets v. Standard Design,* 218 Ga. App. 459, 461 (1) (462 SE2d 406) (1995).

[2] The trial was divided as to liability for compensatory damages, the imposition of punitive damages, and the amount of punitive damages.

damages.[3] Soerries appeals from this judgment.

Soerries argues that Dancause presented insufficient evidence to justify piercing the corporate veil. We disagree. As we have held:

> The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over-extended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility. Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders, the mere operation of corporate business does not render one personally liable for corporate acts. Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends. There must be evidence of abuse of the corporate form. Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control. In deciding this enumeration of error, we are confronted with two maxims that sometimes conflict. On the one hand, we are mindful that great caution should be exercised by the court in disregarding the corporate entity. On the other, it is axiomatic that when litigated, the issue of piercing the corporate veil is for the jury, unless there is no evidence sufficient to justify disregarding the corporate form.

(Citations and punctuation omitted.) *J-Mart Jewelry Outlets v. Standard Design*, 218 Ga. App. 459, 460 (1) (462 SE2d 406) (1995). See also *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 844 (2) (a) (392 SE2d 37) (1990).

In this case, the jury heard testimony from Larry Jones, who managed the Chickasaw Club for 20 years. Jones testified that the club was open four nights a week and regularly admitted an average of 250 people who paid cover charges of $3 to $4 each. Additional patrons were also admitted, so that the club sometimes exceeded its capacity of 477 people. According to Jones, he and the other employees were paid each night in cash by Soerries out of the proceeds of the club. Although Jones testified that 1996 was a "bad year" for the corporation and that he was paid between $10,000 and $12,000, corporate payroll records reported his earnings as only $5,690. Jones

---

[3] Chickasaw Club, Inc. was dismissed from the lawsuit for the punitive damages stages of the trial.

admitted that Soerries sometimes paid him extra cash that was not reported to the club's bookkeeper.

It is undisputed that Soerries paid his employees, suppliers, and entertainers in cash and not from existing corporate checking accounts. One employee admitted he was paid "under the table." The employee never appeared on corporate payroll records, although Soerries admitted giving him money to help out around the club.

Corporate tax returns showed that, even though the Chickasaw Club was a busy nightclub, it regularly declared business losses. On cross-examination, Soerries failed to explain the substantial difference between reported income on corporate and individual tax returns and evidence regarding cash proceeds from cover charges and alcohol sales. When asked how the club paid its employees and other operating expenses while operating at a loss, Soerries explained that he often paid the corporate expenses out of his personal funds.

Soerries owned the property on which the Chickasaw Club was located and testified that he paid his $4,830 monthly mortgage note from the club's cash proceeds. Although Soerries claimed that the club's payments were rent that he then used to pay the note, personal tax returns showed that he received only $34,173 in rent in 1996, even though the corporation reported paying $43,000 in rent in its 1996 corporate tax return. Further, both figures are significantly less than the $57,960 in rent that would have been due from the corporation, based upon 12 months of $4,830 rental payments. Additional evidence showed that Soerries also owned other rental property in 1996 that would have paid $3,150 per month, making the disparity between his alleged rental earnings and his reported income even greater.

A jury could construe this evidence to demonstrate that Soerries commingled individual and corporate assets by personally assuming the corporation's financial liabilities, waiving corporate rental payments, or using corporate funds to directly pay his personal mortgage notes and other expenses. See *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. 672, 673 (327 SE2d 751) (1985) (evidence that sole stockholder used corporate funds to pay personal expenses relevant to determination of whether he used the corporate entity as a mere instrumentality to conduct personal affairs); *Sheppard v. Tribble Heating &c.*, 163 Ga. App. 732, 733 (1) (294 SE2d 572) (1982) (sole stockholder used corporate funds to pay personal loans, including mortgage); cf. *Garrett v. Women's Health Care &c.*, 243 Ga. App. 53, 56 (532 SE2d 164) (2000) (although stockholder loaned the corporation money, there was no evidence that she disregarded the corporate form or treated it as her alter ego). As such, the totality of the evi-

dence presented raised a jury issue on whether Soerries

> disregarded the separateness of legal entities by commingling and confusion of properties, records, control, etc. It is obvious that if the individual who is the principal shareholder or owner of the corporation conducts his private and corporate business on an interchangeable or joint basis as if they were one, then he is without standing to complain when an injured party does the same. Under such circumstances, the court may disregard the corporate entity.

(Citations and punctuation omitted.) *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. at 673 (2). See also *Derbyshire v. United Builders Supplies*, 194 Ga. App. at 844 (2) (a) ("[t]he law intervenes when the separate personalities of the corporation and its owner no longer exist. The question is whether the corporation serves as the alter ego or business conduit of its owner.").

On appeal, we construe all the evidence most strongly in support of the verdict, and if there is evidence to sustain the verdict, we cannot disturb it. *J-Mart Jewelry Outlets v. Standard Design*, 218 Ga. App. at 461 (1). We find that the evidence presented was sufficient to support the jury's decision to pierce the corporate veil.

*Judgment affirmed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED MARCH 2, 2001 — ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Grogan, Jones, Rumer & Gunby, Lee R. Grogan, Christopher J. McFadden*, for appellant.

*William J. Mason*, for appellee.