A03A0350, A03A0351. SCOTT BROTHERS, INC. et al.
v. WARREN; and vice versa.
(582 SE2d 224)

MILLER, Judge.

Danny Warren sued Robert and Glenn Scott and their companies for breach of contract. The jury found in favor of Warren but awarded him damages against Glenn Scott and the companies only. Glenn and the companies appeal, claiming that no evidence (i) supported a portion of the judgment or (ii) showed grounds for piercing the corporate veil. Warren cross-appeals, arguing that the court erred in denying his motion to dismiss the appeal for delay and in allowing certain cross-examination during trial. We discern no error and affirm in both cases.

Construed in favor of the verdict, the evidence shows that Scott Brothers, Inc. (owned by Robert and Glenn Scott, although no stock certificates were issued) operated some video rental stores doing business as Video Superstores and contracted Warren to loan video cassette players and game systems to the stores, which the stores would then rent to customers. The agreement provided that Scott Brothers

would split the machines' rental revenues with Warren, who was obligated to service or replace the machines. The agreement further provided that "[i]n the event the equipment aforementioned is stolen or lost, after all means of recovery have been ex[h]austed both parties agree to share the replacement cost fifty-fifty." Either party could terminate the agreement upon proper notice.

Warren eventually purchased and placed 544 machines in 25 Video Superstores. Unbeknownst to Warren, some of the Video Superstores were actually owned and operated by Scott Development, Inc. or Scott Entertainment, Inc., both of which were owned solely by Glenn Scott. The shared rental payments to Warren relating to the 544 machines came from Scott Brothers, and Warren dealt with Scott Brothers management (who also managed the two affiliates) in replacing lost or stolen machines and receiving 50 percent reimbursement. After three years of regular payments, Scott Brothers refused to make the shared rental payments for several months, so Warren terminated the contract and retrieved his machines.

When retrieving the machines, Warren discovered that 311 of the 544 machines were missing, apparently lost or stolen despite recovery efforts. Scott Brothers refused to pay Warren 50 percent of the replacement costs of the missing machines or to pay the past due shared rental monies, so Warren sued Scott Brothers for breach of contract. With leave of court, he later added Robert and Glenn Scott, Scott Development, and Scott Entertainment as defendants. Following the presentation of the evidence, defendants moved for a directed verdict on the breach of contract claim and on Warren's efforts to pierce the corporate veil to hold Robert and Glenn Scott personally liable. The court denied the motions. Finding Glenn Scott and the three corporations liable, the jury awarded Warren the replacement costs of the missing machines and the past due shared rental monies. Glenn Scott and his three corporations appeal in Case No. A03A0350.

Warren moved to dismiss the appeal for delay in filing the transcript, and after a hearing, the court denied the motion. Warren cross-appeals in Case No. A03A0351.

### Case No. A03A0351

1. Warren complains in his cross-appeal that the court erred in denying his motion to dismiss the main appeal. Since Warren has failed to include a transcript of the hearing which was held in the trial court on this motion, we must assume that the trial court's ruling was correct. *Omni Express v. Cleveland Express*, 178 Ga. App. 42, 43 (1) (341 SE2d 911) (1986); see *Cooper v. State*, 235 Ga. App. 66, 67 (1) (508 SE2d 447) (1998).

2. Warren also complains in his cross-appeal that the trial court erred in allowing in hearsay testimony during the cross-examination of one of the defendants' witnesses. He argues that the testimony "was prejudicial in that it implied that the Plaintiff had breached the contract and was clearly erroneous and for that reason the verdict should be reversed." Warren, however, prevailed on the breach of contract issue at trial, and the jury verdict was in his favor. We discern no prejudicial error.

*Case No. A03A0350*

3. Not contesting the award of past due shared rental payments, Glenn Scott and the three corporations argue in the main appeal that no evidence supported the award of replacement costs. They contend that the court erred in denying their motion for a directed verdict on this issue. We disagree.

In determining whether a trial court erred in denying a motion for a directed verdict, we construe the evidence and any doubts or ambiguities in favor of the verdict. "A directed verdict is not authorized unless there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions[,] demands a certain verdict." (Citations and punctuation omitted.) *Pope v. Professional Funding Corp.*, 221 Ga. App. 552, 553 (1) (472 SE2d 116) (1996); see OCGA § 9-11-50 (a).

Here the contract specified that the parties would share the replacement costs 50-50 for machines stolen or lost. Contrary to defendants' appellate argument, nothing in the contract restricted this cost-sharing arrangement to only those machines discovered missing prior to the end of the contract as opposed to machines discovered missing at the end of the contract. Indeed, in their portion of the pre-trial order entered below, defendants generally conceded liability for these end-of-contract replacement costs and only contested their "exaggerated" amount and whether every defendant was jointly and severally liable for such costs. Since some evidence supported the jury's verdict awarding replacement costs, we hold that the court did not err in denying the motion for a directed verdict on this issue.

4. Glenn Scott enumerates as error the denial of his motion for a directed verdict on his personal liability. He argues that no evidence justified the piercing of the corporate veil so as to hold him personally liable for the breach of contract damages.

To justify piercing the corporate veil to hold a corporate owner liable, the plaintiff must show the owner abused the corporate form by disregarding the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records, or control. *J-Mart Jewelry Outlets v. Standard*

*Design*, 218 Ga. App. 459, 460 (1) (462 SE2d 406) (1995); see *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. 672, 673 (2) (327 SE2d 751) (1985).

> [I]t must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.

(Citation and punctuation omitted.) *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 844 (2) (a) (392 SE2d 37) (1990).

Such evidence may include the owner using corporate funds for personal expenses (see *J-Mart*, supra, 218 Ga. App. at 461 (1)) or the owner bleeding one company to pay the expenses of another company he owns (see *Pope*, supra, 221 Ga. App. at 553-554 (1)) or the owner treating all his companies and himself as one unit (see *Derbyshire*, supra, 194 Ga. App. at 845 (2) (a)). This is a question for the jury, *J-Mart*, supra, 218 Ga. App. at 460 (1), even if there is compliance with some corporate formalities. See *Unified Svcs. v. Home Ins. Co.*, 218 Ga. App. 85, 90 (5) (460 SE2d 545) (1995).

Here evidence showed that the corporations (which have since gone out of business) loaned money to Glenn Scott at a time they were insolvent, with no evident repayment of these loans. He continued to draw a salary after the corporations sold their assets and were insolvent. He ran the three corporations as one unit, using the same management, bookkeeping, and trade name for all three and not informing Warren or other vendors or customers that there were three different owners of the Video Superstores. He also sold the assets of the three corporations for a lump sum figure without allocating the money between the entities and with $55,000 of the proceeds going directly to Glenn personally. Based on this evidence, the trial court did not err in denying the motion for a directed verdict on the issue of piercing the corporate veil so as to make Glenn Scott personally liable for the corporate debts of the three corporations.

*Judgment affirmed in both cases. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED MAY 15, 2003.

*Parkerson, Shelfer, Groff & McDonnell, Robert H. McDonnell*, for appellants.
*Alfred J. Powell, Jr., Richard L. Waters, Jr.*, for appellee.