[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14928

_____

D. C. Docket No. 05-01795-CV-CAP-1

BP PRODUCTS NORTH AMERICA, INC.,

Plaintiff-Appellee,

versus

SOUTHEAST ENERGY GROUP, INC.,
MICHAEL R. HOLLIS

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 23, 2008)**

Before CARNES and MARCUS, Circuit Judges, and DuBOSE,* District Judge.

_____

*The Honorable Kristi K. DuBose, United States District Court for the Southern District of Alabama, sitting by designation.

PER CURIAM:

## I. OVERVIEW

Michael Hollis challenges the district court's order granting BP Products, North America Inc. ("BP") summary judgment on BP's claim that Southeast Energy Group Inc. ("Southeast") was operated as an alter ego for Hollis, the President of Southeast. Because there are genuine issues of material fact which must be resolved by a jury, the trial court's summary judgment in favor of BP on its claim against Hollis is REVERSED.

## II. BACKGROUND

On February 16, 2000, BP and Southeast entered into an agreement in which Southeast agreed to purchase certain properties (gas stations)owned by BP. Hollis executed the agreement on behalf of Southeast. The closing was set for June 2000 and the total purchase price was $42,500,000. As part of the agreement, BP agreed to pay Southeast a $7,000,000 incentive payment which Southeast would repay through a twenty-year note, amortized based on the amount of gasoline Southeast purchased from BP. The twenty-year note was signed by Hollis on January 31, 2000, prior to the execution of the agreement. Hollis signed the note twice, once as President of Southeast and once as "Maker-Principal." On or about February 3, 2000, BP wired an initial incentive payment of $1.5 million

2

to Southeast through its attorney. Subsequently, Southeast notified BP that they would not be closing on the properties. In June 2000, July 2000, February 2002 and October 2004, BP requested that the incentive money be returned. Southeast did not return the money.

On July 8, 2005, BP filed its complaint against Hollis and Southeast, seeking to recover the incentive money plus interest, as well as other damages, from the failure to close on the properties as agreed. BP later amended its complaint to allege that Hollis was personally liable, under an alter-ego theory, for the obligations of Southeast. The district court granted summary judgment for BP on its claims against Southeast[1] and on its claim that Hollis was personally liable for Southeast's obligations.[2]

## III. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law. Huff v. DeKalb County, Ga., 516 F.3d 1273, 1277

---

[1]Although Southeast is listed as an appellant, no argument has been raised regarding the propriety of the court's order as to Southeast. Accordingly the judgment in favor of BP as to its claims against Southeast is AFFIRMED.

[2]The district court did not address BP's claim that Hollis was personally liable on the note based on the allegation that Hollis signed the note in his individual capacity.

(11th Cir. 2008). The word "genuine" as it is used in Rule 56(c) means that the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, (1986).

## IV. DISCUSSION

This appeal presents the issue of whether, on the evidence presented, a reasonable jury could find that Michael Hollis did not operate Southeast as his alter ego. In Georgia, the alter ego doctrine provides that:

> the corporate entity may be disregarded for liability purposes when it is shown that . . . the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.

Baillie Lumber Co. v. Thompson, 612 S.E.2d 296, 299 (2005). "The corporate entity may be disregarded only in exceptional circumstances." McKesson Corp. v. Green, 597 S.E.2d 447, 455 (2004). "In Georgia, these exceptional circumstances include . . . such disregard for the corporate form as to make the corporation a mere sham or a business conduit for the shareholder personally." Id. The purpose of allowing the corporate veil to be pierced is "to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in

4

order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." Baillie, 612 S.E.2d at 299.

Evidence to justify piercing the corporate veil "may include the owner using corporate funds for personal expenses or the owner bleeding one company to pay the expenses of another company he owns or the owner treating all his companies and himself as one unit." Scott Bros., Inc. v. Warren, 582 S.E.2d 224, 227 (2003) (citations omitted). Other factors to consider in the determination of whether to pierce the corporate veil include whether corporate records were maintained properly, whether shareholders' and directors' meetings were held and whether formal authorization of expenditures was observed. See United States v. Fidelity Capital Corp., 920 F.2d 827, 837 (11th Cir. 1991); Pickett v. Paine, 199 S.E.2d 223, 228 (1973). In sum, "[p]roof of the alter ego relationship consists substantially o[f] how the controlling person treated the disputed entity." Fed. Deposit Ins. Corp. v. United States, 654 F. Supp. 794, 810 (N.D. Ga.1986).

Hollis contends that in granting summary judgment on the issue of whether Southeast was Hollis' alter ego, the district court improperly made credibility determinations and denied Hollis the benefit of all reasonable inferences. Moreover, Hollis argues that the district court failed to properly apply Georgia law which counsels: 1) that the alter-ego theory is a two-part inquiry, i.e., was the

5

corporate form abused and was it done with fraudulent intent; and 2) that whether the corporate veil should be pierced is generally a question of fact that the jury should decide.

In support of the summary judgment, BP relies on the lack of documentary evidence that Southeast adhered to the corporate form, Hollis' inability to specifically account for the majority of incentive money, and the lack of any documentary evidence that Southeast engaged in any business outside of contracting with BP. BP also urges affirmance of the district court based on Hollis' inconsistent statements, documentary evidence that appears to contradict Hollis, and the fact that Hollis allowed the documents to be destroyed after being sent four demands for repayment of the incentive money.

## A.

The following are the facts viewed in the light most favorable to Hollis, which is how we are required to view them at this stage of the proceedings. See Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir.1996) ("[W]hat is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes.").

Hollis formed Southeast on August 24, 1999, to acquire and operate

6

convenience stores. (Doc. 49, Hollis deposition, August 29, 2006, pp. 23, 30).

Hollis was the sole shareholder of Southeast and perhaps its only officer, although he thinks that Anthony Jackson may have been an officer. (Id. at pp. 27-28). Initially, Hollis testified that he did not know specifically what happened to the $1.5 million incentive payment and did not recall whether Southeast had a bank account, filed tax returns or ever held a corporate meeting. Hollis further testified that he did not recall whether Southeast had an office, paid rent or acquired any assets, and did not recall whether he was compensated for any work he did on behalf of Southeast. (Id. at pp. 30-38, 46, 59-61, 98, 148). Hollis also initially testified that sometime in 2000 and until Southeast dissolved, Southeast was "pretty dormant," "didn't have any more business to do," and was "not a corporation that had a lot of activity." (Id. at p. 39). Hollis stated that sometime in 2000, Southeast's records were put into a prepaid storage unit. Hollis then received a call in approximately 2004 asking if he wished to renew the rental of the unit. Hollis declined because Southeast was no longer in business and presumably the documents were destroyed. (Id. at pp. 71-76, 80-81).

However, at his second deposition and after the discovery of a Southeast bank account and Southeast tax returns, Hollis testified generally that the $1.5 million was spent on legitimate business expenses of Southeast. Specifically,

7

Hollis believes, after reviewing Southeast's bank account records, that the payments of more than $400,000 to "Michael Hollis" or "Moncrief" from July 2000 to January 2002, were for services that he provided to Southeast. (Doc. 87, Hollis deposition June 21, 2007, pp. 24, 51, 50, 57, 69, 76-79).  Hollis further testified that in 2000 and 2001 he worked "pretty much full-time on Southeast Energy." (Id. at p. 30) Hollis also identified approximately $174,000 of the checks or wire transfers as payments for business equipment, accountant fees, attorney fees transportation expenses, telephone expenses and other business expenses for Southeast. (Id. at pp. 38, 69-74, 79).  Moreover, after reviewing Southeast's tax returns, Hollis believed that approximately $740,000 was used by Southeast for earnest money or extension fees on commercial contracts with Spectrum, Discount Foods or other entities that Southeast attempted to acquire. (Id. at pp. 20, 40, 43, 60-63, 78-79).  Hollis testified that Southeast did not acquire these properties nor was Southeast reimbursed the earnest money. (Id. at p. 21).

B.

At the summary judgment stage all facts asserted by the party opposing summary judgment must be regarded as true if supported by affidavit or other evidentiary material. Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1298 n. 2 (11th Cir. 1983).  "[A]ll that is required is that sufficient

8

evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-289, 88 S. Ct. 1575,1592 (1968)).

The district court held that "the available evidence shows that Hollis used Southeast - a company that observed no corporate formalities, kept no records, and served no discernable function other than to receive a check from BP - as his personal 'piggy bank'" In making this determination the court presumed that the documents Hollis allowed to be destroyed would show a lack of adherence to the corporate form and would also show Hollis' use of Southeast's assets as his own.[3]

Presuming that the evidence is sufficient to sustain the district court's finding that Hollis disregarded the corporate form, there remains a factual issue as to whether Southeast was a sham corporation used to "defeat justice, to perpetrate fraud, or to evade, contractual or tort responsibility." Baillie, 612 S.E.2d at 299. Under Georgia law "[a]s a rule, 'one who deals with a corporation as such an entity cannot, in the absence of fraud, deny the legality of the corporate existence

---

[3] The district court implicitly determined that Hollis' actions were predicated on bad faith. See Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997) ("In this circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." ) This determination is appropriate for the district court to make, as opposed to submitting the issue of bad faith to the jury, because it is imposed as a sanction for failure to preserve evidence. See Flury v. Daimler Chrysler Corp., 427 F.3d 939 (11th Cir. 2005).

for the purpose of holding the owner liable.'" <u>Gardner v. Marcum</u>, No. A08A0578, 2008 WL 2102122 at *3 (Ga. Ct. App. May 20, 2008) (quoting <u>Bulloch South v. Gosai</u>, 550 S.E.2d 750, 756 (2001)).  Hollis' testimony, as recounted above, provides a sufficient basis to withstand summary judgment on this issue.

C.

In the alternative BP invites us to hold that as a matter of law Hollis is personally liable for the failure of Southeast to repay the incentive money based on Hollis' signature on the note in the capacity of "Maker-Principal."  The district court did not decide this issue and we decline to decide it in the first instance ourselves.

## V. CONCLUSION

The judgment as to Southeast is **AFFIRMED**.  However, because genuine issues of material fact exist that preclude summary judgment, we **REVERSE** the judgment of the district court as to Michael Hollis and **REMAND** for further proceedings consistent with this opinion.

10