A11A2127. CHRISTOPHER v. SINYARD et al.
(723 SE2d 78)

PHIPPS, Presiding Judge.
After obtaining a default judgment against Spellbrook Builders, Inc., Anthony and Ellen Sinyard filed a lawsuit against Spellbrook

Builders' officers, R. Dennis Christopher and Joe Spell, seeking to pierce the corporate veil and hold them personally liable for the judgment. Following a nonjury trial, the court granted judgment in favor of the Sinyards and also ordered Christopher and Spell to pay attorney fees. Christopher appeals.[1] For the reasons that follow, we affirm.

1. Christopher contends that the trial court erred in disregarding the corporate status of Spellbrook Builders and holding him personally responsible for the corporation's obligations. We disagree.

> The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility. Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders, the mere operation of corporate business does not render one personally liable for corporate acts. . . .There must be evidence of abuse of the corporate form. [The] [p]laintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control.[2]

> Where those who own or control a corporation have brought about such a unity of interest and ownership as between themselves and the corporation, the unpaid corporate creditor may look to them for satisfaction of the corporation's debts.[3]

"[W]hen litigated, the issue of piercing the corporate veil is for the [trier of fact], unless there is no evidence sufficient to justify disregarding the corporate form."[4]

The evidence, construed most strongly in support of the judg-

---

[1] Spell is not a party to the appeal.

[2] *Soerries v. Dancause*, 248 Ga. App. 374, 375 (546 SE2d 356) (2001) (citations omitted).

[3] *Ishak v. Lanier Contractors Supply*, 254 Ga. App. 237, 238 (1) (561 SE2d 883) (2002) (footnote omitted).

[4] *Soerries*, supra (citations omitted); see generally *Bourke v. Webb*, 277 Ga. App. 749 (627 SE2d 454) (2006) (in a bench trial, the judge sits as trier of fact and the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them).

ment,[5] showed that in 2005, the Sinyards contracted with Spellbrook Builders for the construction of a residence. Toward the end of construction, "punch lists" were created, setting out problems that needed to be corrected. By the March 2006 closing date, some of the punch list items had not been completed. Wanting to proceed with the closing, the parties agreed in writing that Spellbrook Builders would complete the work after the closing. At closing, Spell executed a seller's affidavit on behalf of Spellbrook Builders stating that the building had been completed and that the work and materials were warranted for one year. Christopher met with Anthony Sinyard five days after the closing to discuss the punch lists and the fact that subcontractors were threatening to place liens on the house. When Anthony Sinyard reviewed the punch lists with Christopher, Christopher stated that he could not help and then drove away. The work was never completed. According to Spell, there was no money left after the closing, and the work was not completed because "[w]e were out of money." Similarly, Christopher knew, at the time of the closing, that Spellbrook Builders "would not be doing any further business."

Regarding the separateness of Spellbrook Builders' existence from that of its officers, the evidence showed the following: Spellbrook Builders was incorporated in 2004, and in May 2008 was administratively dissolved or had its certificate revoked by the Secretary of State of the State of Georgia for failing to file its annual registration; Christopher and Spell, the only officers, never signed the corporation's bylaws; no stock certificates were ever issued; no minutes of corporate meetings were ever kept; no annual registrations for the corporation were filed after 2005; the lots upon which Spellbrook Builders built its houses were titled in Christopher's name and then transferred to Spellbrook Builders at or near closing (and then conveyed to third parties); the corporation did not have a physical location; funds obtained at the closing of the Sinyards' home and during construction were paid to Christopher's and Spell's other businesses; Christopher made undocumented loans to Spellbrook Builders; and Christopher and Spell paid some of the corporation's creditors from their personal funds.

Based on the above and other evidence, the trial court held that Christopher and Spell were personally liable for Spellbrook Builders' debts. The court found that, inter alia, other than the initial creation of the corporation, Christopher and Spell had ignored the corporate

---

[5] See *J-Mart Jewelry Outlets v. Standard Design*, 218 Ga. App. 459, 461 (1) (462 SE2d 406) (1995).

formalities required by law,[6] the corporation was undercapitalized, and Spell executed the seller's affidavit at closing (stating that all debts and obligations had been paid) with knowledge that it was false in order to induce the Sinyards to close. The court concluded that to allow Christopher and Spell to avoid liability through the use of the corporate entity under the facts of this case would defeat justice. The trial court did not err in disregarding the corporate form.

Here, there was evidence that Christopher and Spell abused the corporate form and disregarded Spellbrook Builders' separateness by commingling on an interchangeable basis or confusing the otherwise separate properties, records or control.[7] There was also evidence that the officers failed to observe corporate formalities, undercapitalized the corporation, and committed fraud at closing. In sum, the trial court was authorized to conclude that the corporation was a mere alter ego or business conduit of Christopher and Spell.[8]

Christopher asserts that the failure to observe some corporate formalities is not unusual in a "two-man business." But, as we stated regarding the conduct of a corporation's principal shareholder or owner,

> if the individual who is the principal shareholder or owner of the corporation conducts his private and corporate business on an interchangeable or joint basis as if they were one, then he is without standing to complain when an injured party does the same. Under such circumstances, the court may disregard the corporate entity.[9]

The court was authorized to find from the evidence presented that the corporate form had been abused, and that adherence to the doctrine of corporate entity would in this case promote injustice or promote fraud.[10]

---

[6] See, e.g., OCGA §§ 14-2-206 (a) (pertinently providing that the incorporators or directors shall adopt initial bylaws for the corporation), 14-2-1601 (pertinently requiring the keeping of minutes of meetings), and 14-2-1622 (pertinently requiring the filing of an annual registration with the Secretary of State).

[7] Compare *Nat Katz & Assocs. v. Barber*, 255 Ga. App. 207, 208-209 (1) (564 SE2d 802) (2002).

[8] *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289-290 (1) (612 SE2d 296) (2005).

[9] See *Soerries*, supra at 377 (citation omitted); *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. 672, 673 (2) (327 SE2d 751) (1985).

[10] See *Ishak*, supra at 237-238 (1); *Soerries*, supra at 376 (trial court was authorized to find from the evidence presented that shareholder commingled individual and corporate assets by personally assuming the corporation's financial liabilities or using corporate funds to pay noncorporate expenses); *Dews v. Ratterree*, 246 Ga. App. 324, 326-327 (540 SE2d 250) (2000) (where evidence conflicted as to whether owner/shareholder of corporation commingled corporate and personal assets, issues of fact existed regarding whether corporate veil should be

2. Christopher contends that the trial court erred in ordering him to pay attorney fees because he took no part in any of the acts relied upon by the trial court in awarding fees pursuant to OCGA § 13-6-11. This argument is without merit.

OCGA § 13-6-11 pertinently authorizes an award of attorney fees where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. An award of attorney fees under OCGA § 13-6-11 will be affirmed if there is any evidence to support it.[11]

The trial court found that Christopher and Spell had acted in bad faith by promising to correct the items on the punch lists when they had no intention to make the corrections and knew the corporation lacked the funds needed to do so; and by fraudulently swearing that all debts due on the property were paid prior to closing. The court further found that Christopher and Spell had caused the Sinyards unnecessary trouble and expense by ignoring the original complaint filed against the corporation (noting that Christopher had been personally served with that complaint), the result being the entry of a default judgment against the corporation, and then, upon being sued personally, attempting to use the corporate form to avoid personal responsibility.

As discussed above, there was evidence to support the trial court's findings. And while Christopher argues that only Spell was involved in any fraud or misrepresentation, there was evidence that Christopher was responsible for the "financial part" of Spellbrook Builders, including handling the corporate checking accounts; Spellbrook Builders' bills had not been paid as represented at closing; Spellbrook Builders was insolvent and lacked funds to pay for repairs at closing; Christopher's other businesses received funds at the closing of the Sinyards' home; he maintained the real property in his name until closing or near closing; he made no effort after closing to complete the agreed-upon work on the Sinyards' home; and he ignored the lawsuit filed against Spellbrook Builders and served upon him, then, after the Sinyards pursued him personally, he defended that action based on the validity of the corporate entity. Notably, issues of fact regarding whether Christopher acted in bad faith and put the Sinyards to unnecessary trouble and expense within the meaning of OCGA § 13-6-11 were for the finder of fact to decide.[12] Because there was some evidence that Christopher acted in

---

pierced). Cf. *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 306 (404 SE2d 607) (1991); *Abbott Foods of Ga.*, supra; see also *Kissun v. Humana, Inc.*, 267 Ga. 419, 421 (479 SE2d 751) (1997).

[11] *Spring Lake Property Owners Assn. v. Peacock*, 260 Ga. 80, 81 (390 SE2d 31) (1990); *City of Lilburn v. Astra Group*, 286 Ga. App. 568, 570 (649 SE2d 813) (2007).

[12] See *Backus Cadillac-Pontiac v. Ernest*, 195 Ga. App. 579, 581 (2) (394 SE2d 367) (1990)

bad faith, was stubbornly litigious or caused the Sinyards unnecessary trouble and expense, the trial court did not err in ordering Christopher to pay attorney fees.[13]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED FEBRUARY 1, 2012.

*Alexander, Royston, Hardman & Shinall, R. Phillip Shinall III*, for appellant.

*Crudup & Hendricks, Hillary W. Edgar*, for appellees.

---

(questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense, under OCGA § 13-6-11, are generally for the jury to decide).

[13] See generally *Clearwater Constr. Co. v. McClung*, 261 Ga. App. 789, 792 (584 SE2d 61) (2003) (affirming attorney fee award pursuant to OCGA § 13-6-11 based on defendant causing unnecessary trouble and expense where defendant had "sue me" attitude regarding the completion of repairs); *Graves v. Diambrose*, 243 Ga. App. 802, 803-804 (2) (534 SE2d 490) (2000) (affirming attorney fee award where bad faith finding was supported by defendant's failure to make repairs to home as agreed, and finding of stubborn litigiousness was supported by defendant forcing plaintiffs to file lawsuit to recover damages defendant admittedly caused).