**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 12, 2018**

# In the Court of Appeals of Georgia

A18A1119. PURE HOSPITALITY SOLUTIONS, INC. v. CANOUSE.

REESE, Judge.

Pure Hospitality Solutions, Inc. ("Appellant") appeals from the trial court's grant of a default judgment to Joseph Canouse ("Appellee"), who had sued the Appellant after it defaulted on a promissory note. The Appellant contends that the trial court erred in finding that the note provided for liquidated damages, in failing to conduct an evidentiary hearing to determine the amount of unliquidated damages arising from the default, and in awarding attorney fees. For the reasons set forth, infra, we affirm the trial court's grant of a default judgment to the Appellee on the issue of the Appellant's liability on the Note, but we vacate the court's award of

damages, interest, and attorney fees to the Appellee, and we remand this case for an evidentiary hearing on those issues.

The record shows the following undisputed facts. On May 12, 2015, the Appellant executed a $25,000 Convertible Note ("Note") in favor of Tarpon Bay Partners, LLC ("Tarpon Bay"). The Note contained a provision that allowed Tarpon Bay, as the holder of the Note, to convert all or a portion of the amount due on the Note into shares of common stock in the Appellant. The Note required the Appellant to "reserve and keep available" at least thirty million (30,000,000) shares of common stock in case Tarpon Bay decided to exercise its conversion option. In addition, the Note included a provision assessing $1,000 per day in late fees if the Appellant failed to comply with a notice of conversion submitted by Tarpon Bay.

On January 23, 2017, Tarpon Bay executed a "Notice of Conversion" (the "January Conversion Notice") seeking to convert $25,610.27 of the outstanding principal and accrued interest on the Note, plus fees, into 256,102,700 conversion shares of the Appellant's common stock. According to the notice, upon completion of the conversion, the outstanding balance on the Note would be $4,500. Although the Appellant did not respond to or honor the January Conversion Notice, Tarpon Bay

took no further action to compel the Appellant to do so or to otherwise complete the conversion.

On June 6, 2017, Tarpon Bay sold and assigned the Note to the Appellee. The assignment stated that the Appellant was in default on the Note and that the outstanding amount due on the Note was approximately $31,178.08. The next day, the Appellee executed a "Conversion Notice" (the "June Conversion Notice") in which he sought to convert $34,000 in principal he claimed was due on the Note into 340,000,000 shares of the Appellant's common stock. In response to the notice, the Appellant's Chief Executive Officer sent the Appellee an e-mail informing him that "the issuer [did] not have enough shares at treasury[ ]" to execute the conversion.

On August 16, 2017, the Appellee filed a verified complaint against the Appellant for breach of contract and theft by conversion. Attached to the complaint were several documents, including the Note, the conversion notices, and the assignment. According to the complaint, the Appellant's failure to honor the June Conversion Notice damaged the Appellee in an amount not less than $68,000, i.e., the alleged value of 340,000,000 shares traded at a rate of $0.0002 per share.[1] In addition,

---

[1] Attached to the Appellee's complaint was a document that appears to show the daily "Bid Price" of the Appellant's stock from November 28, 2016, through January 27, 2017. Because we are vacating the trial court's award of damages and

according to the complaint, the Appellant's failure to honor the January Conversion Notice entitled the Appellee to $1,000 per day in late fees for 202 days, totaling $202,000 in liquidated damages under the Note. The complaint also sought attorney fees pursuant to OCGA §§ 13-1-11 and 13-6-11.

On September 14, 2017, the Appellee filed a "Notice of Filing of Proof of Service" showing that the Appellant had been served with process on September 1, 2017, at the address of its registered agent. The Appellant did not file a responsive pleading by the due date, October 2, 2017, nor did it move to open default within the 15-day period that expired on October 17, 2017.[2]

On October 27, 2017, the Appellee filed a motion for a default judgment for liquidated damages in the amount of $68,000 in principal; $202,000 in late fees accrued since January 26, 2017; pre- and post-judgment interest; and attorney fees pursuant to OCGA § 13-1-11. On November 6, 2017, the trial court issued an order granting a default judgment to the Appellee. In the same order, the court found that

remanding this case for an evidentiary hearing, see Division 2, infra, we offer no opinion on whether the document was properly authenticated to constitute admissible evidence in this case.

[2] See OCGA § 9-11-55 (a).

4

all of the damages sought by the Appellee were liquidated and awarded him

$282,501.61, plus post-judgment interest. This appeal followed.[3]

OCGA § 9-11-55 (a) provides, in relevant part, as follows:

> If in any case an answer has not been filed within the time required by
> this chapter, the case shall automatically become in default unless the
> time for filing the answer has been extended as provided by law. The
> default may be opened as a matter of right by the filing of such defenses
> within 15 days of the day of default, upon the payment of costs. If the
> case is still in default after the expiration of the period of 15 days, the
> plaintiff at any time thereafter shall be entitled to verdict and judgment
> by default, in open court or in chambers, as if every item and paragraph
> of the complaint or other original pleading were supported by proper
> evidence, without the intervention of a jury, unless the action is one ex

---

[3] Although the Appellant filed a motion to open the default on November 20, 2017, it also filed its notice of appeal from the default judgment on December 4, 2017, before the trial court had ruled on the motion to open default. Once the Appellant filed its notice of appeal, the trial court no longer had jurisdiction to alter the default judgment or rule on the motion to open the default. See *Shropshire v. Alostar Bank of Commerce*, 314 Ga. App. 310, 312 (1) (724 SE2d 33) (2012) ("OCGA § 5-6-46 (a) provides that the filing of a notice of appeal serves as supersedeas when all costs in the trial court are paid. This automatic supersedeas deprives the trial court of jurisdiction to modify or alter the judgment in the case pending the appeal.") (punctuation and footnote omitted). Because the Appellant failed to obtain a ruling on its motion to open the default, any arguments raised in the motion are not before this Court and will not be addressed. See *Bell v. Owens*, 230 Ga. App. 826, 828 (3) (497 SE2d 591) (1998) ("It is the duty of counsel to obtain a ruling on his motions or objections, and the failure to do so will ordinarily result in a waiver.") (citations and punctuation omitted).

delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as to damages[.]

Thus, "a defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery."[4]

"Since this appeal involves questions of law concerning the nature of damages in [the Appellee's] complaint and the trial court's entry of default judgment for liquidated damages, this Court must review the record de novo and apply a 'plain legal error' standard of review."[5] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

---

[4] *Fink v. Dodd*, 286 Ga. App. 363, 364-365 (1) (649 SE2d 359) (2007) (citations and punctuation omitted).

[5] *GMC Group v. Harsco Corp.*, 304 Ga. App. 182 (695 SE2d 702) (2010) (citation omitted).

1. As an initial matter, the Appellant does not challenge the trial court's grant of a default judgment on the issue of its liability on the Note. Consequently, that ruling is affirmed by operation of law.[6]

2. The Appellant contends that the trial court erred in finding that the Appellee's damages were liquidated and in awarding such damages without conducting an evidentiary hearing, pursuant to OCGA § 9-11-55 (a),[7] to determine the amount to which the Appellee was entitled. In response, the Appellee argues that his complaint and the documents attached thereto (collectively, "the pleadings") established all of the necessary facts to support his claim and that the trial court was able to calculate the specific amount of damages to be awarded by applying the mathematical formula[8] in the Note to those facts.

---

[6] See *Cotton v. Smith*, 310 Ga. App. 428, 429 (1) (714 SE2d 55) (2011) (Because the appellant failed to assert any error as to a specific ruling in the trial court's order, any error as to that ruling was deemed abandoned, and that ruling was affirmed by operation of law.); see also Court of Appeals Rule 25 (c) (2).

[7] See OCGA § 9-11-55 (a) (If a cause of action is in default and involves unliquidated damages, "the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages[.]").

[8] In this case, the Note contained the following provision, which explained the process for the "Holder" (Tarpon Bay and, by assignment, the Appellee) to convert

7

principal due on the Note into shares of common stock in the "Company" (the Appellant) and the methodology for determining the price of such shares:

> The Holder of this Note is entitled, at its option, at any time after the issuance of this Note, to convert all or any lesser portion of the Outstanding Principal Amount and accrued but unpaid Interest into Common Stock at a conversion price (the "Conversion Price") for each share of Common Stock at a 50% discount from the lowest closing bid price in the 30 trading days prior to the day that the Holder requests conversion, unless otherwise modified by mutual agreement between the Parties . . . ; *provided that* if the closing bid price for the common stock on the Clearing Date (defined below) is lower than that used for the Conversion Price, then the Conversion Price shall be adjusted such that the Discount shall be taken from the closing bid price on the Clearing Date, and the Company shall issue additional shares to [the] Holder to reflect such adjusted conversion price. For interest that accrues pursuant to the terms of this Note, the conversion price shall be at $.001, par value, regardless of the trading price ("Interest Conversion"). . . . For purpose of this Section, the closing bid price of the Common Stock shall be the closing bid price as reported by the Nasdaq Stock Market, or on the over-the-counter market or, if the Common Stock is listed on another stock market or exchange, the closing bid price on such exchange as reported by Bloomberg LP. In the event that [the Holder] elects to convert this Note in part, the conversion price for each conversion event shall be calculated at the time of conversion in part. The Holder may convert this Note into Common Stock by delivering a conversion notice . . . executed by the Holder of the Note evidencing such Holder's intention to convert the Note. For purposes of this Agreement, the Clearing Date shall be on the date in which the conversion shares are deposited into the Holder's brokerage account and [the] Holder's broker has confirmed with [the] Holder [that] the Holder may execute trades of the conversion shares. The Clearing Date will be reported to Issuer, and Issuer will issue reset shares if needed. The Company shall bear any and all miscellaneous expenses that may arise as a result of conversion and delivery of shares of common stock in respect of the Note, including but

8

When a trial court issues a default judgment against a defendant, "the default operates to admit only the well-pled factual allegations of the complaint and the fair inferences and conclusions of fact to be drawn from those allegations. . . . It is axiomatic that a default does not result in the admission of allegations that are not well-pled or that are the result of forced inferences."[9]

In order for damages to be considered "liquidated," the damages must be an amount that is

> certain and fixed, either by the act and agreement of the parties, or by operation of law; a sum which cannot be changed by proof; it is so much or nothing. On a motion for default judgment, the amount of damages must be ascertainable from the pleadings. Mere conclusory allegations of the amount owed are insufficient to render the damages liquidated; otherwise every case where a specific amount is stated in the complaint as due and owing would be turned into a liquidated amount by the default.[10]

Further,

_____

. . . not limited to the cost of the issuance of a Rule 144 legal opinion, transfer agent fees, equity issuance and deposit fees, etc. . . .

[9] *Fink,* 286 Ga. App. at 364-365 (1) (citations and punctuation omitted).

[10] *GMC Group*, 304 Ga. App. at 183 (1) (citations and punctuation omitted).

9

[f]or the [trial] court to conclude upon default that damages are liquidated and dispense with an evidentiary hearing on damages, the plaintiff must have alleged facts sufficient to show how the amount of damages claimed was calculated, or the plaintiff must attach to his complaint the relevant contract, invoices, or other documents demonstrating that the plaintiff is due the amount claimed.[11]

(a) In the instant case, we find that there are material conflicts in the pleadings that have to be resolved before the trial court can calculate the value of the stock on the day the Appellee submitted the June Conversion Notice and can award that amount as damages.

For example, the Appellee's complaint asserted that, on June 7, 2017, he had been entitled to convert $34,000 in "principal" due on the Note into 340,000,000 shares of common stock; that the shares were traded at a "daily average of $0.0002"; and that, as a result, he was entitled to damages "in an amount to be proven at trial, but not less than $68,000," or 340,000,000 multiplied by $0.0002. However, the assignment of the Note from Tarpon Bay to the Appellee stated that it was a "Notice of Sale and Assignment of Notes, Interest, Default and other Obligations"; that the

---

[11] *Kitchen Intl. v. Evans Cabinet Corp.*, 310 Ga. App. 648, 653 (2) (714 SE2d 139) (2011) (citation omitted).

Appellant was in default on the Note; and that the amount of the Appellant's "obligations" under the Note totaled approximately "$31,178.08" as of June 6, 2017. Thus, the pleadings do not show that, on June 7, 2017, the Appellee was entitled to convert $34,000 of "principal" into common stock, given that that amount exceeded the total amount then due on the Note.

In addition, the complaint's assertion that, in June 2017, the shares "traded at a daily average of $0.0002" was unsupported by any documentation and, thus, was merely a conclusory allegation that does not support a finding that the damages were liquidated.[12] Moreover, according to the complaint, the Appellee was entitled to damages "in an amount to be proven at trial, but not less than $68,000.00[,]" which showed that the Appellee had merely estimated the amount of damages he claimed were due.

Under these circumstances, the pleadings did not show that the amount of damages that arose from the Appellant's failure to honor the Appellee's June Conversion Notice were "certain and fixed" or "a sum which cannot be changed by proof[.]"[13] Consequently, the trial court erred in concluding that those damages were

[12] See *GMC Group*, 304 Ga. App. at 183 (1).

[13] See *GMC Group*, 304 Ga. App. at 183 (1).

11

liquidated and in awarding those damages in its order granting the Appellee a default judgment.[14]

(b) Additional evidentiary conflicts are evident in the Appellee's claim for $202,000 in late fees as liquidated damages.[15] That claim was based upon the 202 days that had passed between January 26, 2017, the date the Appellant failed to honor

---

[14] See id.

[15] The Note contained the following provision regarding the assessment of late fees if the Appellant (herein referred to as "the Borrower") defaulted on a conversion notice submitted by the holder of the Note:

> Without in any way limiting the Holder's right to pursue other remedies, including actual damages and/or equitable relief, the parties agree that if delivery of the Common Stock issuable upon conversion of this Note is not delivered by the Deadline (3 Trading days) the Borrower shall pay to the Holder $1,000 per day in cash, for each day beyond the Deadline that the Borrower fails to deliver such Common Stock. Such cash amount shall be paid to [the] Holder by the fifth day of the month following the month in which it has accrued or, at the option of the Holder (by written notice to the Borrower by the first day of the month following the month in which it has accrued), shall be added to the principal amount of this Note, in which event interest shall accrue thereon in accordance with the terms of this Note and such additional principal amount shall be convertible into Common Stock in accordance with the terms of this Note. The Borrower agrees that the right to convert is a valuable right to the Holder. The damages resulting from a failure, attempt to frustrate, [or] interfere with such conversion right are difficult if not impossible to qualify. Accordingly[,] the parties acknowledge that the liquidated damages provision contained in this Section are justified.

the January Conversion Notice submitted by Tarpon Bay (the Appellee's predecessor-in-interest), and August 16, 2017, the date the Appellee filed his complaint. However, the Appellee's pleadings do not show that the Appellee was entitled to late fees based upon the *January* Conversion Notice, when he sued for damages based upon the *June* Conversion Notice.

Moreover, the Note expressly required the Appellant either (1) to pay the late fees to Tarpon Bay on a monthly basis following its default on the January Conversion Notice, *or* (2) upon written request by Tarpon Bay, to add the late fees to the principal amount due on the Note.[16] The Appellee's pleadings are silent, however, on whether the Appellant paid the late fees to Tarpon Bay prior to Tarpon Bay's assignment of the Note to the Appellee in June 2017. Further, the pleadings do not show that Tarpon Bay gave the required written notice to the Appellant to add the late fees to the amount due on the Note. On the contrary, the pleadings clearly show that the Appellant's total "obligations" on the Note on June 6, 2017, the date Tarpon Bay assigned the Note to the Appellee, were only about $31,178.08, instead of the approximately $162,000 that would have been due at the time of the assignment if the late fees for 131 days (January 26 to June 6, 2017) had been added to the amount due

---

[16] See footnote 15, supra.

13

on the Note. Thus, the pleadings do not establish a "certain and fixed" amount of late fees to which the Appellee was entitled.[17]

Under these circumstances, we find that the damages and late fees to which the Appellee was entitled were not liquidated and that, as a result, the trial court erred in awarding such damages to the Appellee without conducting an evidentiary hearing, as required by OCGA § 9-11-55 (a).[18] We vacate the trial court's award of damages and late fees to the Appellee and remand this case for such hearing.

3. The Appellant contends that the court erred in awarding $5,160.55 in interest to the Appellee as liquidated damages. The Appellant argues that the Appellee's complaint failed to assert a claim for interest due on the Note, nor did the complaint allege the facts necessary to calculate a certain and fixed amount of interest due as liquidated damages. In addition, the Appellant argues that the trial court erred in awarding such interest under OCGA § 13-6-13.[19]

---

[17] See *GMC Group*, 304 Ga. App. at 183 (1).

[18] See *Kitchen Intl.*, 310 Ga. App. at 653 (2); *GMC Group*, 304 Ga. App. at 183 (1); *Fink*, 286 Ga. App. at 364-365 (1).

[19] See OCGA § 13-6-13 ("In all cases where an amount ascertained would be the damages at the time of the breach, it may be increased by the addition of legal interest from that time until the recovery.").

In response, the Appellee admits that his citation to OCGA § 13-6-13 in his motion for a default judgment was a mistake. Even so, he asserts that OCGA § 7-4-15[20] authorized the award and that this Court should affirm the award under the "right for any reason" rule.[21] By its plain language, however, OCGA § 7-4-15 applies to an award of "liquidated demands" for damages. For the reasons explained in Division 2, supra, it necessarily follows that OCGA § 7-4-15 did not authorize the court's award of interest in this case.

More importantly, under the express language of the Note, the calculation of interest that was due was dependent on the "Outstanding Principal Amount,"[22] and that amount must be determined by the trial court following a hearing on remand, as

---

[20] See OCGA § 7-4-15 ("All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand. In case of promissory notes payable on demand, the law presumes a demand instantly and gives interest from date.").

[21] See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002) (Under the "right for any reason" rule, an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different than the reason relied upon by the lower court.).

[22] In the Note, the Appellant promised to "pay interest on the Outstanding Principal Amount ('Interest') in a lump sum on the Maturity Date, at the rate of ten percent (10%) per Annum (the 'Rate') from the date of issuance."

explained in Division 2, supra. Consequently, the trial court's award of interest must be vacated.

4. The Appellant also contends that the trial court erred in awarding attorney fees under OCGA § 13-1-11 (a) (2), because the amount of the fees awarded was based on the court's improper award of unliquidated damages.

OCGA § 13-1-11 (a) (2) provides as follows:

Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to subsection (b) of this Code section and to the following provision[:] If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees[23] without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00[.]

---

[23] See OCGA § 13-1-11 (b) (1) ("If, in a civil action, application of the provisions of paragraph (2) of subsection (a) of this Code section will result in an award of attorney's fees in an amount greater than $20,000.00, the party required to pay such fees may, prior to the entry of judgment, petition the court seeking a determination as to the reasonableness of such attorney's fees.").

In this case, the Note contained the following provision concerning attorney fees: "If one or more of the 'Events of Default' as described above shall occur, the Company agrees to pay all costs and expenses, including reasonable attorney's fees, which the Holder may incur in collecting any amount due under, or enforcing any terms of, this Note." Thus, the Note did not "specif[y] any specific percent"[24] that the Appellee was entitled to in attorney fees in the event of a default. It follows that, in order to determine the amount of attorney fees due in this case, the trial court must first ascertain the amount of principal and interest owed on the Note, and then apply the calculation from OCGA § 13-1-11 (a) (2) to that amount.

Because, as explained in Divisions 2 and 3, supra, the amount of principal and interest to which the Appellee is entitled needs to be determined by the trial court upon remand, the court's award of attorney fees, which are dependent on that determination, must be vacated.

5. In a related argument, the Appellant contends that the trial court erred when it awarded attorney fees under a Georgia statute, OCGA § 13-1-11, when the Note

---

[24] See OCGA § 13-1-11 (a) (2); cf. OCGA § 13-1-11 (a) (1) ("If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness[.]").

17

contained a forum selection clause stating that it "shall be governed by and construed in accordance with the laws of the State of Connecticut." To the extent the Appellant is arguing that the trial court must apply Connecticut law regarding attorney fees following remand by this Court, we disagree.

> Because forum selection clauses involve procedural rights, we apply Georgia law even though the agreement also contains a provision dictating that it be governed by the laws of [Connecticut]. Forum selection clauses, such as the one in the case at bar, in which the parties consent to the jurisdiction of a given state[,] address not subject-matter jurisdiction, but rather personal jurisdiction.[25] While we have held on numerous occasions that such forum selection clauses are prima facie valid[,] such clauses are essentially no more than contractual provisions, and as such may be waived. . . . [Thus, the Appellant] waived the clause when it failed to file an answer or motion to dismiss and allowed the entry of a default judgment.[26]

___

[25] See OCGA § 9-11-12 (h) (1) (B) (the defense of lack of personal jurisdiction is waived if it is not raised in the defendant's responsive pleading or a motion made before or at the time of the pleading).

[26] *Euler-Siac S.P.A. (Creamar Spa) v. Drama Marble Co.*, 274 Ga. App. 252, 253-254 (1) (617 SE2d 203) (2005) (citations, punctuation, and footnotes omitted). See *Rice v. Champion Bldgs.*, 288 Ga. App. 597, 600-601 (2) (654 SE2d 390) (2007) ("Forum selection clauses are essentially no more than contractual provisions, and as such may be waived. . . . [T]he named defendant . . . waived the clause when it failed to file an answer or motion to dismiss and allowed the entry of a default judgment.") (punctuation and footnotes omitted).

Based on the foregoing, the trial court is authorized to apply Georgia law when considering whether to award attorney fees on remand.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Barnes, P. J., and McMillian, J., concur.*