**SECOND DIVISION**
**DOYLE, P. J.,**
**RICKMAN, P. J., and DAVIS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 23, 2025**

# In the Court of Appeals of Georgia

A25A0861. SANVI BUSINESS, LLC et al. v. UNITED GAMING, LLC.

DAVIS, Judge.

In this dispute over a licensing agreement, Sanvi Business, LLC and Vikramdip Singh seek review of the trial court's final judgment confirming an arbitration award in favor of United Gaming, LLC. The appellants argue that the trial court erred by (1) denying Sanvi's motion to dismiss the application to confirm the arbitration award due to improper service of process; (2) failing to give Sanvi 30 days to respond to the application; (3) entering judgment against Singh individually when the arbitration award was only entered against Sanvi; and (4) denying Singh's motion to open default.

We agree that the trial court erred by concluding it lacked the authority to dismiss United Gaming's confirmation motion based on improper service of process,

and we therefore vacate the trial court's confirmation order against Sanvi and its order denying Sanvi's motion to dismiss and remand for it to address the issue in the first instance. Additionally, while the trial court did not abuse its discretion by denying Singh's motion to open default, we conclude that the trial court erred by entering a default judgment because United Gaming failed to state a valid claim of relief against him. We therefore affirm the denial of Singh's motion to open default but reverse the default judgment entered against him.

"In reviewing a trial court's order confirming an arbitration award, this Court will affirm unless the trial court's ruling was clearly erroneous. However, we review the trial court's resolution of questions of law de novo." (Citation omitted.) *Nix v. Scarbrough*, 369 Ga. App. 850, 856 (2) (894 SE2d 658) (2023). In addition, "[t]he sole function of an appellate court reviewing a trial court's denial of a motion to open default is to determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts peculiar to each case." (Citation omitted.) *Troika Entertainment, LLC v. Mendez*, 360 Ga. App. 904, 907 (4) (862 SE2d 572) (2021). We also review de novo any question

of law related to the entry of a default judgment. *Pure Hosp. Solutions, Inc. v. Canouse*, 347 Ga. App. 592, 594 (820 SE2d 434) (2018).

The record shows that United Gaming is a master licensee of coin operated amusement machines as defined by OCGA § 50-27-70, and Sanvi and Singh were location licensees who operated a convenience store in Ball Ground, Georgia. Singh was Sanvi's sole owner. A dispute arose between United Gaming and Sanvi over a contract for the placement of a machine, and United Gaming brought the matter to arbitration as required by OCGA § 50-27-102 (d) (2) before Finch Mediation and Arbitration Services. Sanvi failed to appear, and on December 2, 2022, the arbiter entered an award against Sanvi consisting of injunctive relief and $49,875.77 in damages.

United Gaming filed the instant petition to confirm the arbitration award against Sanvi in Cherokee County Superior Court on November 30, 2023. United Gaming also sought to enforce the award against Singh personally by alleging that he had disregarded Sanvi's corporate form and that the trial court was allowed to pierce Sanvi's corporate veil. While Singh was personally served on December 14, 2023, a certificate of service that was filed on the same day stated that Sanvi's registered agent

3

could not be found because the company had been sold to another entity. On March 27, 2024, Singh filed an answer, and Sanvi filed a motion to dismiss by special appearance for lack of service of process of the confirmation motion. Singh joined the motion to dismiss, arguing that United Gaming had failed to state a claim for relief against him personally. United Gaming moved for a default judgment against Singh due to his untimely answer, and Singh filed a responsive motion to open default. United Gaming ultimately served Sanvi on September 7, 2024.

Following a hearing, the trial court denied the motions to open default and to dismiss and entered a final judgment confirming the arbitration award against both Sanvi and Singh. In so doing, the trial court rejected Sanvi's argument concerning service, concluding that improper service of process of the confirmation application was not one of the grounds in OCGA § 9-9-13 (b) to vacate an arbitration award and that it was required to confirm the award as a result. This appeal followed.

1. Sanvi first argues that the trial court erred by concluding that it lacked the authority to dismiss United Gaming's petition to confirm the arbitration award based on United Gaming's failure to timely serve it with the petition to confirm the arbitration award. We agree.

Georgia's Arbitration Code provides that "[t]he court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified by the court as provided in this part." OCGA § 9-9-12. "[A]n arbitration award confirmation proceeding filed pursuant to the Georgia Arbitration Code . . . is a special statutory proceeding, not a civil action." *Hardin Constr. Group, Inc. v. Fuller Enterprises, Inc.*, 265 Ga. 770, 771 (462 SE2d 130) (1995). Nevertheless, the Arbitration Code provides that "[t]he initial application to the court shall be served on the other parties in the same manner as a complaint under [the Civil Practice Act]." OCGA § 9-9-4 (c) (2); see *Hardin Constr. Group, Inc.*, supra, 265 Ga. at 771 ("[T]he statute requires that the application [for confirmation] be filed and served in the same manner as a complaint in a civil action[.]"). United Gaming "was thus required to serve its motion to [confirm] the arbitration award in accordance with the procedures mandated by OCGA § 9–11–4." *Abe Eng., Inc. v. Travelers Indem. Co.*, 210 Ga. App. 551 (1) (436 SE2d 754) (1993).

Notwithstanding this authority, the trial court rejected Sanvi's untimely service of process argument after concluding it only had the authority to deny United Gaming's confirmation application based on one of the five grounds delineated in

OCGA § 9-9-13 (b).[1] We have indeed emphatically said many times that "a trial court is bound to confirm an arbitration award unless one of the statutory grounds for vacating an award as set forth in OCGA § 9-9-13 (b) is found to exist." *Bilbo v. Five Star Athlete Mgmt., Inc.*, 334 Ga. App. 208, 212 (2) (778 SE2d 834) (2015). But that statement is true only as far as the *merits* of a confirmation proceeding are concerned. This statement does not mean that a court lacks the power to dismiss an application to confirm an arbitration award if a party fails to comply with the *procedural* prerequisites that are listed in other parts of the Arbitration Code beyond OCGA § 9-9-13 (b) – both this Court and the Supreme Court of Georgia have concluded

---

[1] That section provides that

[t]he [arbitration] award shall be vacated on the application of a party who either participated in the arbitration or was served with a demand for arbitration if the court finds that the rights of that party were prejudiced by: (1) Corruption, fraud, or misconduct in procuring the award; (2) Partiality of an arbitrator appointed as a neutral; (3) An overstepping by the arbitrators of their authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; (4) A failure to follow the procedure of this part, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or (5) The arbitrator's manifest disregard of the law.

6

otherwise. See *Hardin Constr. Group, Inc.*, supra, 265 Ga. at 771 ("[T]he statutory scheme for confirmation contemplates certain prerequisites to maintaining an arbitration confirmation action. . . . Whether the applicable statute of limitation or other jurisdictional prerequisites have been met are issues necessarily resolved by the trial court after the party seeking confirmation files its application for confirmation.") (emphasis omitted); *Riddick v. Williams & Bowling Developers, LLC*, 311 Ga. App. 666, 667 (716 SE2d 776) (2011) (affirming dismissal of confirmation application as untimely filed under OCGA § 9-9-12); *Abe Eng., Inc.*, supra, 210 Ga. App. at 551 (1) (affirming dismissal of application to modify arbitration award and to "enter judgment" on a favorable arbitration award due to insufficient service of process under OCGA § 9-9-4 (c) (2)). OCGA § 9-9-4 (c) (2) states that the initial application of an arbitration matter to a trial court "*shall* be served on the other parties in the same manner as a complaint under [the Civil Practice Act]" (emphasis supplied), and thus if United Gaming failed to effect proper and timely service of process on Sanvi according to the rules of the Civil Practice Act, its confirmation application would be due to be dismissed as to that party. *Abe Eng., Inc.*, supra, 210 Ga. App. at 551 (1).

Under the Civil Practice Act, "the mere filing of a complaint does not commence a suit; instead the plaintiff must file the complaint and effect proper timely service as required by law." (Citation omitted.) *Mote v. State Farm Mut. Auto. Ins. Co.*, 375 Ga. App. 303, 304 (916 SE2d 19) (2025).

> Nevertheless, Georgia law permits a complaint to be served beyond the limitation period. As our appellate courts have explained, if the timely filing of the petition is followed by timely service perfected as required by law, although the statute of limitation runs between the date of the filing of the petition and date of service, the service will relate back to the time of filing so as to avoid the limitation period. In this regard, our Civil Practice Act contains what has been deemed a safe harbor provision, which provides for the relation back of service if the person making such service shall make the service within five days from the time of receiving the summons and complaint. But, according to the statute, service is not automatically invalidated even when made outside the statute of limitation and outside the safe harbor provision. Under these circumstances, the relation back of the service to the date of filing is dependent upon the diligence exercised by the plaintiff in perfecting service. The plaintiff has the burden of showing that due diligence was exercised. The determination of whether the plaintiff is guilty of laches in failing to exercise due diligence in perfecting service after the running of the statute of limitations is a matter within the trial court's discretion[.]

8

(Citations and punctuation omitted.) Id. at 304-305. Accordingly, because resolution of the service of process issues here requires fact-finding and the exercise of discretion by the trial court, we vacate the trial court's orders confirming the arbitration award against Sanvi and denying Sanvi's motion to dismiss, and we remand for the trial court to address the issue of service of process in the first instance.[2]

2. Singh argues that the trial court abused its discretion by denying his motion to open default and that it erred by entering a default judgment against him because the well-pled facts in United Gaming's motion to confirm the arbitration award did not support a claim to pierce Sanvi's corporate veil. While the trial court did not abuse its discretion by denying Singh's motion to open default, we conclude that the trial court erred by entering a default judgment because United Gaming failed to state a valid claim of relief against Singh.

(a) We first conclude that the trial court did not abuse its discretion by denying Singh's motion to open default.

---

[2] In light of our conclusion, we do not reach the appellants' argument that the trial court erred by failing to provide Sanvi with 30 days after service to respond to the confirmation motion.

Under OCGA § 9-11-55 (b),[3] at any time before final judgment, a trial court has the discretion to open default on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case. The four conditions precedent are: (1) a showing made under oath, (2) an offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. Compliance with the four conditions is a condition precedent and once met, the question of whether to open the default on one of the three grounds rests within the sound discretion of the trial court.

(Citations and punctuation omitted.) *Troika Entertainment, LLC*, supra, 360 Ga. App. at 906-907 (4).

Singh argues that he presented a "proper case" for opening default[4] because (1) United Gaming failed to state a claim of relief against him; and (2) Sanvi is not liable to United Gaming because of insufficient service of process, and it would be unfair to find him liable through a corporate veil piercing theory when Sanvi, the

___

[3] As no party contests otherwise, we will assume for the sake of this appeal that OCGA § 9-11-55 applies to this special statutory proceeding involving an application to confirm an arbitration award, especially since United Gaming's claim against Singh was not arbitrated but was newly added as part of the confirmation petition.

[4] In his motion to open default, Singh asked the trial court to open his default on both the excusable neglect and proper case grounds, but he does not challenge the trial court's ruling on the excusable neglect prong on appeal.

corporate entity in question, is not. As discussed more thoroughly below in Division 2 (b), however, there is no need for Singh to open the default for him to be able to argue that United Gaming's confirmation application stated no claim for relief against him. Cf. *Contour Sierra, LLC v. Williams*, 370 Ga. App. 74, 76-79 (1) (894 SE2d 127) (2023) (defendant's pleading alleging that the well-pled factual allegations in the plaintiffs' complaint did not establish claims for liability was not properly characterized as a motion to open default because default did not prevent the defendant from raising that argument). Second, a service of process defense does not go to the merits of the case, *Palmer v. Constantin*, 256 Ga. App. 233, 234 (1) (568 SE2d 79) (2002), and so it would not be incongruous or unfair for Singh to be liable to United Gaming even if the trial court eventually dismisses any claims against Sanvi for insufficient service of process.

Thus, neither of Singh's contentions necessarily presents a proper case for opening default, and so he has not shown that the trial court abused its wide discretion by denying his motion to open default. See *Troika Entertainment, LLC*, supra, 360 Ga. App. at 908-909 (4) (b) ("Our review of the proper-case ruling is highly deferential,

and we will reverse only if the trial court manifestly abused [its] discretion.") (citation and punctuation omitted).

(b) We agree with Singh, however, that the trial court erred in entering a default judgment against him because United Gaming failed to state a valid claim of relief against him personally.

When a case is in default, the plaintiff is entitled to judgment "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence[.]" OCGA § 9-11-55 (a).

> In other words, a default operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. A defendant in default has admitted each and every material allegation in a plaintiff's complaint except the amount of damages, and the defendant is estopped from offering any defenses that would defeat the right of recovery. That being said, conclusions of law, facts not well-pled, and forced inferences generally are not admitted by a default judgment. Simply stated, while a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein. A default simply does not require blind acceptance of a plaintiff's erroneous conclusions of law. Nor does a default preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to

12

recover. In considering the sufficiency of factual allegations in a complaint to which the defendant has defaulted, we resolve all doubts in favor of the plaintiff.

(Citations and punctuation omitted.) *Hansford v. Veal*, 369 Ga. App. 641, 643-644 (1) (894 SE2d 215) (2023).

The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility. Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders, the mere operation of corporate business does not render one personally liable for corporate acts. Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends. There must be evidence of abuse of the corporate form. Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control.

(Citation omitted.) *Soerries v. Dancause*, 248 Ga. App. 374, 375 (546 SE2d 356) (2001). Generally, a claim to pierce a corporate veil is warranted only "[w]here those who own or control a corporation have brought about such a unity of interest and

13

ownership as between themselves and the corporation," that a trier of fact may conclude "that the corporation was a mere alter ego or business conduit of [the owners]." (Citations omitted.) *Christopher v. Sinyard*, 313 Ga. App. 866, 867, 869 (1) (723 SE2d 78) (2012).

Here, the arbitration award was only entered against Sanvi, and the arbiter did not address any issues regarding Singh's liability. As part of its motion to confirm the award, United Gaming alleged that Singh was vicariously liable for the arbitration award under a corporate veil piercing theory. To support its claim of veil piercing, United Gaming alleged that Singh "allowed the entity known as Sanvi Business, LLC to be administratively dissolved as an entity" "for failure to file its annual registration, failure to maintain a registered agent or registered official in this state, and/or failure to submit payment for a dishonored fee payment or for fees, taxes, or penalties owed . . . Such actions show a disregard for the corporate form." These allegations of corporate neglect and abandonment, however, are insufficient for a claim of veil piercing. The complaint is devoid of allegations that Singh commingled his assets with Sanvi's, that he disregarded Sanvi as a separate entity when making transactions, or

that he otherwise fraudulently abused the corporate form.[5] Thus, we are compelled to conclude that the well-pled facts in United Gaming's complaint cannot support a claim for relief against Singh. Compare *Lyle v. Fulcrum Loan Holdings, LLC*, 354 Ga. App. 742, 747 (5) (841 SE2d 182) (2020) (plaintiffs stated a claim for relief to pierce two corporate veils when they alleged that the sole owner of two LLCs "disregarded corporate formalities; intermingled corporate and personal funds, staff, and property; undercapitalized the entities to avoid creditors; used corporate funds to pay individual obligations; and siphoned off corporate funds for himself, his family, and other entities he controls."); *Soerries*, supra, 248 Ga. App. at 376 (claim for corporate veil piercing was supported by evidence that the owner "personally assum[ed] the corporation's financial liabilities, waiv[ed] corporate rental payments, or us[ed] corporate funds to directly pay his personal mortgage notes and other expenses.").

Thus, while Singh admitted each and every well-pled fact, those facts taken together did not show that he has any personal liability for the arbitration award. The

---

[5] We note that the complaint does not allege that any of the damages or underlying breaches of the licensing agreement that supported the arbitration award occurred after Sanvi's dissolution. Cf. *Don Swann Sales Corp. v. Echols*, 160 Ga. App. 539, 541 (287 SE2d 577) (1981) (owner who purported to act on behalf of a corporation was personally liable for transactions that occurred at a time when the corporation was non-existent).

trial court therefore erred by entering a default judgment against him. See *Paris v. E. Michael Ruberti, LLC*, 355 Ga. App. 748, 754 (845 SE2d 720) (2020); *Fink v. Dodd*, 286 Ga. App. 363, 365-368 (1) (a)-(b) (649 SE2d 359) (2007).

In sum, we vacate the trial court's denial of Sanvi's motion to dismiss and the trial court's confirmation order against Sanvi, and we remand for the court to address the issue of service of process in the first instance. We affirm the denial of Singh's motion to open default but reverse the default judgment entered against him.

*Judgment affirmed in part, reversed in part, vacated in part, and case remanded. Doyle, P. J., and Rickman, P. J., concur.*