**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 21, 2020**

# In the Court of Appeals of Georgia

A20A1085, A20A1086. SAKS MANAGEMENT AND ASSOCIATES, LLC. v. SUNG GENERAL CONTRACTING, INC. et al.; and vice versa.

MCFADDEN, Chief Judge.

These cases involve a dispute between the owner of an apartment complex and various individuals and companies involved in the work of renovating the complex. After the owner, Saks Management and Associates, LLC, terminated its contract with the general contractor, Sung General Contracting, Inc., this litigation followed.

In Case No. A20A1085, Saks appeals the denial of its motion for summary judgment on Sung General Contracting's counterclaims, arguing that they are barred because Sung General Contracting was not licensed when Sung General Contracting entered the contract with Saks. In Case No. A20A1086, Sung General Contracting

cross-appeals the denial of its motion for summary judgment on all of Saks' claims other than breach of contract.

We agree with Saks that Sung General Contracting's counterclaims are barred because Sung General Contracting did not have a state general contractor license when it entered the contract with Saks. So we reverse in Case No. A20A1085. We hold that Sung General Contracting was entitled to summary judgment on Saks' claims for fraud, conversion, and piercing the corporate veil, but not on Saks' other claims. So we affirm in part and reverse in part in Case No. A20A1086.

1. *Procedural and factual background.*

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' OCGA § 9-11-56 (c)." *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). "On appeal from the denial or grant of summary judgment, the appellate court must conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving

2

party, warrant judgment as a matter of law." *Newstrom v. Auto-Owners Ins. Co.*, 343 Ga. App. 576, 577 (1) (807 SE2d 501) (2017) (citation omitted).

So viewed, the record shows that in July 2016, Sung General Contracting and Saks entered a contract for work on Saks' apartment complex on Sylvan Road in Atlanta. Chol Chung is the sole owner of Sung General Contracting. He has always referred to himself as Sung Chung and uses that name in his business. Chol Chung and Sung General Contracting have never been licensed contractors.

In August 2016, the city of Atlanta issued a stop work order on the project because required permits had not been issued. Sung General Contracting hired professional engineer and licensed general contractor Sung Chung to help obtain the permits. Although Chol Chung is known as Sung Chung and owns Sung General Contracting, he and professional engineer Sung Chung are different people. Sung Chung asked Chol Chung to get a letter from Saks to facilitate obtaining the permits, so Chol Chung requested a letter of acknowledgment from the owner of Saks and the general manager of the complex. Chol Chung told them what needed to be in the letter. The September 21, 2016 letter stated:

To Whom It May Concern:

3

In June 2016, Yorkminster Square Apartments PKA The New Park At Sylvan located at 2001 Sylvan Road SW, Atlanta, GA 30310, was purchased by Saks Management and Associates, LLC represented by Louis Beria. The property is currently undergoing renovations and upgrades contracted by Sung General Contracting Inc. Saks Management and Associates, LLC. acknowledges Sung Chung as lead contractor for purposes of permit acquisition and communication with the City of Atlanta.

Although Chol Chung goes by the name Sung Chung, he never informed the owner that he is not the Sung Chung referenced in the letter. Saks emailed the letter to Chol Chung, who forwarded it to professional engineer Sung Chung, who sent the letter to the city and got the permits.

The July 2016 contract anticipated that the work would be substantially complete by March 31, 2017. Saks timely made the first three of five contemplated payments. The fourth payment was due March 25, 2017. On February 1, 2017, Sung General Contracting demanded full payment by February 3, and threatened to stop work because it had expected a payment (outside the scheduled payments) but that payment was not made and Saks had brought in outside contractors. Saks paid $200,000 and the parties accelerated the date for completion of the first phase of the project to February 28, 2017. Sung General Contracting did not finish the work by

4

February 28, 2017, but it continued working until March 24, 2017, when Saks terminated the contract.

Saks filed this complaint against multiple defendants, including Sung General Contracting, Chol Chung, and professional engineer Sung Chung, alleging multiple claims, including breach of contract, negligence, conversion, unjust enrichment, and fraud. The defendants answered and Sung General Contracting filed counterclaims for, among other things, breach of contract, quantum meruit, and unjust enrichment. Saks moved for summary judgement on Sung General Contracting's counterclaims. The defendants moved for summary judgment on most of Saks' claims. The trial court denied the parties' motions for summary judgment, and these appeals followed. (The notice of cross-appeal specified that the "defendants" appealed. But only defendant Sung General Contracting filed a brief in either A20A1085 or A20A1086, so the other defendants' appeal is deemed abandoned, leaving Sung General Contracting as the sole cross-appellant. See *City of Brookhaven v. City of Chamblee*, 329 Ga. App. 346 n. 2 (765 SE2d 33) (2014).)

2. *The denial of Saks' motion for summary judgment on Sung General Contracting's counterclaims*.

(a) *OCGA § 43-41-17 (b)*.

5

Saks argues that it is entitled to summary judgment on Sung General Contracting's counterclaims because OCGA § 43-41-17 (b), which concerns residential and general contractor licensing requirements, bars Sung General Contracting's claims. We agree.

"The statutes at issue in this case are included in Chapter 41 of Title 43 of the Georgia Code, which provides a broad statewide licensing system for residential and general contractors. . . ." *Restor-It v. Beck*, 352 Ga. App. 613, 615 (835 SE2d 398) (2019). OCGA § 43-41-17 (a) provides, in pertinent part, that no person shall have the right to engage in the business of general contracting without a current, valid general contractor license issued by the State Licensing Board for Residential and General Contractors. OCGA § 43-41-17 (b) provides in pertinent part:

> As a matter of public policy, any contract entered into on or after July 1, 2008, for the performance of work for which a residential contractor or general contractor license is required by this chapter and not otherwise exempted under this chapter and which is between an owner and a contractor who does not have a valid and current license required for such work in accordance with this chapter *shall be unenforceable in law or in equity by the unlicensed contractor*. For purposes of this subsection, a contractor shall be considered unlicensed only if the contractor was unlicensed on the effective date of the original contract for the work, if stated therein, or, if not stated, the date the last party to

6

the contract executed such contract, if stated therein. . . . . This subsection shall not affect the rights of parties other than the unlicensed contractor to enforce contract, lien, or bond remedies. . . .

OCGA § 43-41-17 (b) (emphasis supplied.)

The parties do not dispute that Sung General Contracting and Chol Chung did not have Georgia contractor's licenses when the construction contract was executed and when the work was performed pursuant to the contract. The construction contract clearly identifies [Sung General Contracting] as the "Contractor" and [Saks Management & Associates] as the "Owner" of the [real property] on which the construction was to be completed. Thus, under OCGA § 43-41-17 (b), the construction contract is not enforceable by [Sung General Contracting] in law or in equity unless an exemption applies.

*Baja Properties, LLC v. Mattera*, 345 Ga. App. 101, 103 (1) (812 SE2d 358) (2018).

Sung General Contracting argues that an exemption applies: the repair rule exemption of OCGA § 43-41-17 (g). Subsection (g) states:

Nothing in this chapter shall preclude a person from offering or contracting to perform or undertaking or performing for an owner repair work, provided that the person performing the repair work discloses to the owner that such person does not hold a license under this chapter and provided, further, that such work does not affect the structural integrity of the real property. The board shall by rule or regulation

7

further define the term "repair" as used in this subsection and any other necessary terms as to the scope of this exemption.

OCGA § 43-41-17 (g). In accordance with the statute, the State Licensing Board for Residential and General Contractors has enacted a repair rule that defines "repair" "to mean fixing, mending, maintenance, replacement or restoring of a part or portions of real property to good condition." Ga. Comp. R. & Regs. r. 553-8-.01. The repair rule further provides:

> Nothing in this [r]ule shall preclude a person or entity (including employees of said entity) from offering or contracting to perform or undertaking or performing for an owner repair work, provided that: (1) the person performing the repair work discloses in writing to the owner that such person/entity is not licensed as a residential or general contractor under this chapter; (2) the work does not entail the delegation or assignment to or engagement of any person or entity, other than employees, to supervise, manage or oversee the performance of any portion of the work undertaken; (3) the work does not affect the life safety requirements or structural integrity of the real property. Such repairs shall not include the removal or addition of any load bearing wall or the removal or cutting of any structural beam or load bearing support; and (4) The person performing repair must obtain permits and inspections as required by the local authority.

Ga. Comp. R. & Regs. r. 553-8-.01.

Sung General Contracting argues that the undisputed evidence demonstrates that the work did not affect a load-bearing element, so it is entitled to invoke the repair rule exemption. Ga. Comp. R. & Regs. r. 553-8-.01 (3). But Sung General Contracting points to no evidence that it "disclose[d] in writing to [Saks] that [Sung General Contracting was] not licensed as a residential or general contractor[,]" a prerequisite to the application of the repair rule exemption. Ga. Comp. R. & Regs. r. 553-8-.01 (1).

Sung General contracting argues that, in spite of the statute, the contract was voidable, not void. We disagree.

> Where a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are void and unenforceable.

*San Miguel Produce v. L. G. Herndon Jr. Farms*, __ Ga. __, __ (4) (843 SE2d 403) (2020) (citation and punctuation omitted). The statewide licensing system for general contractors was enacted for the interest of the public. See OCGA § 43-41-1 ("It is the intent of the General Assembly, in the interest of public health, safety, and welfare,

9

to safeguard homeowners, other property owners, tenants, and the general public against faulty, inadequate, inefficient, and unsafe residential and general contractors. The practice of residential and general contracting is declared to be a business or profession affecting the public interest and this chapter shall be liberally construed so as to accomplish the intent and purposes stated in this Code section."). So the contract between Sung General Contracting and Saks is void, at least as far as Sung General Contracting's right to enforce it in law or in equity. See OCGA § 43-41-17 (b); *San Miguel*, supra, at __ (5).

(b) *Novation.*

Sung General Contracting argues that under OCGA § 13-4-5, a novation occurred and a new, enforceable contract was entered when Saks brought in Sung Chung to serve as the general contractor. That statute provides, "A simple contract regarding the same matter and based on no new consideration does not destroy another simple contract between the same parties; but, if new parties are introduced so as to change the person to whom the obligation is due, the original contract is at an end." OCGA § 13-4-5. As evidence of this new, enforceable contract, Sung General Contracting refers to the September 21, 2016 "letter of acknowledgment"

stating that Saks "acknowledges Sung Chung as lead contractor for purpose of permit acquisition and communication with the City of Atlanta."

> To prove the affirmative defense of novation . . . , a party must show that four circumstances are present: (1) a previous valid obligation, (2) the agreement of the parties to the new contract, (3) a mutual intention by the parties to substitute the new contract for the old one, and (4) the validity of the new contract. If these essentials, or any one of them, are wanting, there can be no novation. Specifically, the party pleading novation must show that the person substituted as the debtor in the place of the person released became such as the result of an agreement in which all three concurred.

*Stewart v. Johnson*, 269 Ga. App. 698, 699 (605 SE2d 111) (2004) (citations and punctuation omitted). Sung General Contracting has pointed to no evidence that Saks agreed to substitute professional engineer Sung Chung for Sung General Contracting to serve as the general contractor. Chol Chung, the principal of Sung General Contracting, went by the name of Sung Chung, and Sung General Contracting points to no evidence creating a question of fact that Saks knew the "Sung Chung" referenced in the letter of acknowledgment was professional engineer Sung Chung rather than Chol Chung. And the letter of acknowledgment itself states only that Saks "acknowledges Sung Chung as lead contractor for purpose of permit acquisition and

11

communication with the City of Atlanta" — not for any other purpose. Sung General Contracting has not shown a question of fact on the issue of novation.

(c) *Waiver and estoppel*.

Sung General Contracting also argues that Saks waived its right to enforce and is estopped from enforcing the general contractor licensing statutes by acquiescing in and accepting work from Sung General Contracting. We disagree because "[n]ot even estoppel can legalize or vitalize that which the law declares unlawful and void. If so, the conduct of individuals, whether independently or collusively, could render any and all laws invalid and impotent." *Corey Outdoor Advertising v. Bd. of Zoning Adjustments*, 254 Ga. 221, 224 (3) (327 SE2d 178) (1985) (citation and punctuation omitted). Cf. *Flournoy v. Highlands Hotel Co.*, 170 Ga. 467, 471 (153 SE 26) (1930) (although circumstances would ordinarily work an estoppel, "the express provision in the securities law relating to the sale of securities in violation of the regulations of the State and its public policy debars the courts from giving their aid to the enforcement of such criminal contracts, and will entitle the subscriber to repudiate the subscription contract in accordance with the quasi-criminal provisions of the securities law").

The trial court erred by denying Saks' motion for summary judgment on Sung General Contracting's counterclaims.

3. *Denial of Sung General Contracting's motion for summary judgment on Saks' claims.*

Sung General Contracting argues that it was entitled to summary judgment on Saks' claims for fraud, negligent misrepresentation, negligent construction, unjust enrichment, conversion, piercing the corporate veil, punitive damages, and attorney fees.

(a) *Fraud.*

Sung General Contracting argues that it was entitled to summary judgment on Saks' fraud claim because Saks has pointed to no evidence that Sung General Contracting had no intention of completing the work by February 28, 2017, when it promised to do so. We agree.

Saks alleged that Sung General Contracting is liable for fraud for falsely representing that it would complete the first phase of the project by February 28, 2017, and, that in justifiable reliance on this representation, it paid Sung General Contracting $200,000.

Generally, a fraud claim

cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made. Otherwise, any breach of a contract would amount to fraud. An exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place.

*Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (3) (547 SE2d 373) (2001) (citation omitted). Saks has only pointed to evidence that Sung General Contracting made the promise to complete the work by February 28, 2017, not that Sung General Contracting had no intention of completing the work by February 28, 2017, when it made the promise. Evidence that Sung General Contracting failed to perform its promise is insufficient to support a fraud claim. *Jonas v. Jonas*, 280 Ga. App. 155, 159-160 (3) (a) (633 SE2d 544) (2006). Compare *Lumpkin v. Deventer North America*, 295 Ga. App. 312, 315-316 (1) (672 SE2d 405) (2008) (subcontractor's testimony about contractor's actions indicating no intent to fix roof problem was evidence from which jury could find contractor made promises about fixing the roof that he did not intend to keep). The trial court erred by denying Sung General Contracting's motion for summary judgment on Saks' fraud claim.

(b) *Negligent misrepresentation*.

Saks relies on the same allegations regarding Sung General Contracting's promise to complete the first phase work by February 28, 2017, to support its claim for negligent misrepresentation. Sung General Contracting is not entitled to summary judgment on this claim.

> Liability for negligent misrepresentation attaches when a defendant makes a false representation upon which the plaintiff relies. The same principles apply to both fraud and negligent misrepresentation cases and the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed.

*Bowden v. The Medical Center*, __ Ga. __, __ (2) (a) n. 11 (__ SE2d __) (Case Nos. S19G0494, S19G0496, decided June 29, 2020) (citations and punctuation omitted).

Sung General Contracting argues that it was entitled to summary judgment on the negligent misrepresentation claim because Saks did not seek to rescind the contract. We disagree because the alleged "misrepresentation[ was] made in the contract itself." *Chhina Family Partnership, L.P. v. S-K Group of Motels*, 275 Ga. App. 811, 813 (2) (622 SE2d 40) (2005).

Sung General Contracting also argues that summary judgment on the negligent misrepresentation claim is warranted because Saks failed to investigate the feasibility

15

of the February 28 completion date, and that consequently Saks's reliance on the promise to complete work by that date was not justified. But "[i]ssues of justifiable reliance and proper due diligence are generally for the jury[.]" *Northwest Plaza, LLC v. Northeast Enterprises*, 305 Ga. App. 182, 191 (3) (a) (699 SE2d 410) (2010).

Finally, Sung General Contracting argues that Saks was not damaged by its failure to meet the deadline and in fact benefitted because it allowed Sung General Contracting to continue to work beyond the deadline, and Saks did not pay for that work. We hold that this, too, presents an issue for the jury, given the conflicting evidence on damages.

The trial court did not err in denying Sung General Contracting's motion for summary judgment on Saks' negligent misrepresentation claim.

(b) *Negligent construction*.

Sung General Contracting argues that it is entitled to summary judgment on Saks' negligent construction claim because Saks failed to point to specific negligent acts and failed to present expert testimony about industry standards. We disagree.

A negligent construction claim "arises from breach of a duty implied by law to perform the work in accordance with industry standards." *Young v. Oak Leaf*

*Builders*, 277 Ga. App. 274, 278 (2) (626 SE2d 240) (2006) (citation and punctuation omitted).

> In order to show negligent construction, it is essential to present competent evidence as to the acceptability of specific professional conduct. Our law requires building contractors to exercise that degree of care and skill as is ordinarily employed by other contractors under similar conditions and like circumstances. Further, the standard of care must be established through expert testimony.

*Hudson v. Santangelo*, 228 Ga. App. 768, 773 (2) (b) (492 SE2d 673) (1997) (citations, punctuation, and emphasis omitted). Saks presented the affidavit of Tony Vincent, who testified about his 30 years' experience in the construction industry and about specific actions taken by Sung General Contracting that did not meet the degree of care and skill ordinarily employed by other contractors, including the installation of HVAC units and other electrical work. Given this evidence, Sung General Contracting has not shown that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law," OCGA § 9-11-56 (c), on the negligent construction claim.

(c) *Conversion*.

Sung General Contracting argues that it is entitled to summary judgment on Saks' claim for conversion because there is no identifiable fund subject to conversion. We agree.

In its complaint and amended complaint, Saks alleged the defendants are liable for conversion of the payments it made to Sung General Contracting pursuant to the contract. Money may be the subject of a conversion claim as long as the allegedly converted money is specific and identifiable. *Park Place Café v. Metropolitan Life Ins. Co.*, 254 Ga. App. 733, 738 (2) (563 SE2d 463) (2002). For example, we have held that a plaintiff could pursue a conversion claim when the plaintiff gave the defendant money that was "specifically earmarked to purchase" a certain interest in real property on the plaintiff's behalf. *Hudspeth v. A & H Constr.*, 230 Ga. App. 70, 71 (2) (495 SE2d 322) (1997). We have held that a plaintiff could pursue a conversion claim for money in an account that constituted specific, identifiable funds that were held in escrow for the sole benefit of the plaintiff. *Adler v. Hertling*, 215 Ga. App. 769, 773-774 (2) (451 SE2d 91) (1994). Here, however, "the damages sought by [Saks] do not represent a specific, identifiable amount of money owned by [it] or earmarked for a particular purpose, which [Sung General Contracting has] appropriated for [itself]." *Park Place Café*, 254 Ga. App. at 738-739 (2) (punctuation

omitted). See also *Decatur Auto Center v. Wachovia Bank, N.A.*, 276 Ga. 817, 821 n.8 (583 SE2d 6) (2003) ("a cause of action for conversion does not lie on account of a mere failure to pay money due under a contract") (citation and punctuation omitted).

Moreover, to establish a claim for conversion apart from the contract claim, Saks would have to show that it had a right to the money, other than under the contract, that Sung General Contracting violated by exercising dominion over it. *Alpha Balanced Fund, LLLP v. Irongate Performance Fund, LLC*, 342 Ga. App. 93, 105 (3) n. 23 (802 SE2d 357) (2017). A "tort claim for conversion cannot be based on the breach of a contractual duty alone[.]" *ULQ, LLC v. Meder*, 293 Ga. App. 176, 181 (3) (666 SE2d 713) (2008). Here, Saks is alleging conversion based on Sung General Contracting's breach of contract. Sung General Contracting is entitled to summary judgment on the conversion claim.

(d) *Unjust enrichment*.

Sung General Contracting argues that it is entitled to summary judgment on Saks' unjust enrichment claim because the parties have a written contract. But viewed in the light most favorable to Saks, the pleadings can be construed to assert the claim for unjust enrichment as an alternative theory of recovery for a failed contract. See *Tidikis v. Network for Medical Communications & Research, LLC*, 274 Ga. App. 807,

19

811 (2) (619 SE2d 481) (2005). So Sung General Contracting is not entitled to summary judgment on this claim. Cf. *Wachovia Ins. Svcs. v. Fallon*, 299 Ga. App. 440, 449 (6) (682 SE2d 657) (2009) (defendants were entitled to summary judgment on unjust enrichment claim asserted as a separate tort and not as an alternative theory of recovery for a failed contract).

(e) *Piercing the corporate veil.*

Sung General Contracting argues that Saks has pointed to no evidence creating a genuine issue of fact as to whether the circumstances authorize piercing the corporate veil. We agree.

> The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility. Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders, the mere operation of corporate business does not render one personally liable for corporate acts. There must be evidence of abuse of the corporate form. The plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control. Where those who own or control a corporation have brought about such a unity of interest and ownership as between themselves and

20

the corporation, the unpaid corporate creditor may look to them for satisfaction of the corporation's debts. When litigated, the issue of piercing the corporate veil is for the trier of fact, unless there is no evidence sufficient to justify disregarding the corporate form.

*Christopher v. Sinyard*, 313 Ga. App. 866, 867 (1) (723 SE2d 78) (2012) (citations and punctuation omitted).

In its appellate brief, Saks only points to evidence that Sung General Contracting's business account was used to pay Chol Chung's personal credit card bills and personal expenses and that Chol Chung transferred money between his personal and various business bank accounts. Saks, however, has pointed to "no evidence showing that these were not legitimate business expenses or authorized by the corporation as part of [Chol Chung's] compensation. . . ." *Fuda v. Kroen*, 204 Ga. App. 836, 838 (420 SE2d 767) (1992). On the other hand, Sung General Contracting points to evidence that corporate funds were used to pay Chol Chung's personal credit card when he used that card for business purchases and that he appropriately took distributions from the corporate account. Saks has not pointed to "evidence sufficient to justify disregarding the corporate form," *Christopher*, 313 Ga. App. at 867 (1), and Sung General Contracting is entitled to summary judgment on the claim to pierce the corporate veil.

21

(f) *Punitive damages and attorney fees.*

Sung General Contracting argues that it is entitled to summary judgment on Saks' claim for punitive damages and attorney fees because the only claim that can support punitive damages is the fraud claim. But under certain circumstances, negligent construction can support the award of punitive damages. See *Schoenbaum Ltd. Co., LLC v. Lenox Pines, LLC*, 262 Ga. App. 457, 472 (9) (b) (585 SE2d 643) (2003). Contrary to Sung General Contracting's argument, it is not entitled to summary judgment on the claim for punitive damages and attorney fees simply because it is entitled to summary judgment on the fraud claim.

*Judgment affirmed in part and reversed in part in Case No. A20A1086. Judgment reversed in Case No. A20A1085. Doyle, P. J., and Hodges, J., concur.*